**STEPHEN L. BRISCHETTO, OSB No. 781564**
slb@brischettolaw.com
621 SW Morrison St Ste 1025
Portland OR 97205
Telephone: 503 223-5814
Fax: 503 228-1317

**MATTHEW C. ELLIS, OSB No. 075800**
matthew@employmentlawpdx.com
Matthew C. Ellis, PC
621 SW Morrison St., Ste. 1025
Portland, OR  97205
Tel: (503) 345-5497

Of Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON
PORTLAND DIVISION

| | | |
|---|---|---|
| **DIANA KARTHAUSER,** | ) | Case No. 3:20-cv-00127-SI |
| | ) | |
| Plaintiff, | ) | |
| vs. | ) | **PLAINTIFF'S WITNESS LIST** |
| | ) | |
| **COLUMBIA 911 COMMUNICATIONS** | ) | |
| **DISTRICT,** | ) | |
| | ) | |
| Defendant. | ) | |

   Plaintiff may call the following witnesses at trial in this case as a part of plaintiff's case

in chief.  Witnesses below not called as a part of plaintiff's case in chief may be called as a part

of plaintiff's rebuttal case, though Plaintiff reserves the right to call additional rebuttal witnesses

depending on the testimony elicited by Defendant Columbia 911 Communications District.

PAGE 1 – PLAINTIFF'S WITNESS STATEMENTS

*LAW OFFICE OF STEPHEN L. BRISCHETTO*
*ATTORNEY AT LAW*
*621 SW Morrison St., Suite 1025*
*Portland, Oregon 97205*
*Telephone:  (503) 223-5814*
www.employmentlaworegon.com

(Defendant Columbia 911 Communications District hereinafter referred to as "C911.") The

estimated lengths of testimony given below are estimates of the witnesses' direct exam.


    1.  Diana Karthauser
       1206 SE Bellflower Street
       Clatskanie, Oregon 97016
       Occupation:  Support Agent for Kaiser Permanente

**Length of Direct Exam: 3 hours**

Ms. Karthauser is the Plaintiff in the case. She will testify consistent with her deposition

in this case and with her declaration in opposition to Defendant's Motion for Summary

Judgment.

Ms. Karthauser will testify that she was employed with C911 for 18 years from March

2000 until July 2018 and that throughout her employment she received overwhelmingly positive

feedback, numerous awards, as well as promotions to Supervisor/Lead Dispatcher and to a

management position as a Communications Manager.  She will testify that, in her most recent

role as Communications Manager, she reported to  Executive Director Steve Watson from

January 2016- April 2017, to Interim Executive Director Brian Burright from May 2017- April

2018, and to Executive Director Mike Fletcher from April 2018 until her termination in July

2018.

Plaintiff will testify that in approximately 2015, C911 began the multiyear process of

transitioning to a CAD (Computer Aided Dispatch) system which allows 911 operators to use a

computer to answer calls and route them to the appropriate agency. An additional feature of the

CAD software was that it integrated with certain instructional "card" EMD (Emergency Medical

PAGE 2 – PLAINTIFF'S WITNESS STATEMENTS

*LAW OFFICE OF STEPHEN L. BRISCHETTO*
*ATTORNEY AT LAW*
*621 SW Morrison St., Suite 1025*
*Portland, Oregon 97205*
*Telephone:  (503) 223-5814*
www.employmentlaworegon.com

Dispatching) systems, such as those created by the company, APCO. Under the system prior to the CAD implementation, the cards were actual physical cards. Under the new CAD system, the cards would be accessed electronically through the CAD software and the new electronic cards would auto populate when the dispatcher puts in the correct call type.  These cards or prompts walked 911 operators through a series of prompts to help the operator to assist the callers with medical, CPR or other emergency scenarios.

Plaintiff will testify that transitioning to new cards was anticipated to go smoothly, especially for experienced dispatchers, because they were already used to using a card system created by DPSST, and the substance of the new APCO cards and old DPSST cards were very similar. Furthermore, she will testify that most experienced operators didn't need to use the cards much, anyway.

Plaintiff will testify that she was required to train people on the new cards in order to be certified by APCO and attended APCO "teacher training" to certify her to teach the dispatchers on the new cards. She will testify that the APCO Florida "teacher training" course she attended in Florida very general. It covered how to teach the course, such as how to lay out the room or to facilitate group exercises. However, it did not cover the substance of EMD and the use of the APCO cards, which was covered in a previous prerequisite class that she had not yet attended. APCO  recommended that Plaintiff attend the in-person prerequisite EMD course, not an online version of the course, so she could see what a real class was like.

When she returned from Florida, she told Mr. Watson that she needed to attend the in-person EMD course so she would know the substance of what to teach and learn from the person teaching it and let him know that he had signed her up for the wrong class.

PAGE 3 – PLAINTIFF'S WITNESS STATEMENTS

*LAW OFFICE OF STEPHEN L. BRISCHETTO*
*ATTORNEY AT LAW*
*621 SW Morrison St., Suite 1025*
*Portland, Oregon 97205*
*Telephone:  (503) 223-5814*
www.employmentlaworegon.com

Plaintiff will testify that Mr. Watson told her C911 could not afford to send her to an in-person class and to attend the cheaper online class, instead.  She will testify that the course was valued at 32 hours of training, but taking the course online took much less time than 32 hours for her to complete. For example, she will testify that one portion of the online training was credited as 8 hours but only took six minutes. She will testify about the structure and substance of the online class she took, which she later emulated in conducting the modified APCO training for C911.

Plaintiff will testify that the APCO and CAD transition stalled when Mr. Watson was investigated and resigned in lieu of termination in April 2017 and, when Mr. Burright became Interim Executive Director, he continued the transition to CAD and APCO. Plaintiff will testify that in late 2017 Burright told her that they needed to change the transition plan, which caused significant problems because of staffing issues at C911, and do the APCO training before the CAD training.  Plaintiff will testify that, at this time, to help address the staffing issues. Plaintiff was working approximately 90 hours per week, most of it uncompensated.

Plaintiff will testify that she proposed having current staff attend the online training she attended but that Burright or rejected that plan because of the cost. She will testify that she then proposed to ED Burright that she conduct the training on the APCO cards in the same manner as the online course she took through APCO; which was mostly a "self-study" with some limited group discussion; and a second part involving one person testing the dispatchers use of the cards with scenarios. She will testify that Burright agreed with this plan and that Plaintiff taught the APCO training consistent with that plan.  She will testify that the staff, in reliance on her training , used the new cards for several months and that no issues were brought to her attention

PAGE 4 – PLAINTIFF'S WITNESS STATEMENTS

*LAW OFFICE OF STEPHEN L. BRISCHETTO*
*ATTORNEY AT LAW*
*621 SW Morrison St., Suite 1025*
*Portland, Oregon 97205*
*Telephone:  (503) 223-5814*
www.employmentlaworegon.com

regarding any significant problems with the APCO training. Plaintiff will testify that she signed documents submitted to DPSST certifying the training because the dispatchers completed the requirements for the training course and the course was valued at 40 hours. However, she will testify that this was an innocent mistake since she misremembered that the training was supposed to be for a value of 32 hours, not 40 hours.

Plaintiff will testify that she spoke to Mr. Fletcher both before he was hired and after, about the need to do more comprehensive training for any new hires, since her modified approach would only be appropriate for more seasoned dispatchers who barely used the cards to begin with. She will testify that, even before he was hired, he referred her to his wife who conducts APCO training for Washington County to talk in more detail about her concerns.

Plaintiff will testify about her part in the 2017  investigation into Watson by Liani Reeves. She will testify that she disclosed to Reeves that Watson had asked her out and that Plaintiff rejected him and that she  knew about Watson's advances toward Ms. Turula and his treatment of Trish Hilsinger in the workplace.  Plaintiff will testify that after Mr. Watson learned of Ms. Reeves report, Mr. Watson was angry at Plaintiff for opposing his harassment and for making him look like a liar. Plaintiff will testify that her opposition of Watson's conduct was widely known at C911 and that people approached her about her statements to Reeves.

Plaintiff will testify that, both before and during the Watson investigation, and well before he was hired by C911 as their Executive Director, that Mr.  Fletcher worked closely with C911 because he was the primary point person for the agencies transitioning to CAD.  She will testify that Mr. Fletcher regularly attended board meetings of C911 in the spring of 2017 when Watson was being investigated, that he and Watson jointly presented progress reports to the

PAGE 5 – PLAINTIFF'S WITNESS STATEMENTS

*LAW OFFICE OF STEPHEN L. BRISCHETTO*
*ATTORNEY AT LAW*
*621 SW Morrison St., Suite 1025*
*Portland, Oregon 97205*
*Telephone:  (503) 223-5814*
www.employmentlaworegon.com

Board on the CAD project at the meetings and were seen meeting privately around that time. She will testify that Watson told her that they were good friends, fishing buddies and had a side job providing security at a fair down in San Diego.

Plaintiff will testify that Jason McClaffrety was hired around the same time as Watson and that their jobs, as managers, were similar in all material respects.  Plaintiff will testify that she reported Mr. McClafferty to Mr. Fletcher for improperly changing her password to the CJIS system and for accessing the CJIS system, which she administered, which Fletcher identified as a potentially criminal act by McClafferty.

Plaintiff will testify that on June 11, 2018, Mr. Fletcher informed here that he was putting her on administrative leave with pay and would not tell her why. Plaintiff will testify that on July 16, Mr. Fletcher advised her that she was terminated but did not provide her advance notice of the  proposed action nor any facts giving rise to the action. Plaintiff will testify that she was not provided with the Blitz/Servo report or any information about their investigation prior to July 16. She will testify that during this meeting Mr. Fletcher suggested that the District Attorney was acting in concert with C911 to secure her termination, that there was an active criminal investigation and that if she admitted to the allegations the DA would go easier on her. Plaintiff will testify that she was advised not to give her side of the story in the meeting and that Mr. Fletcher stopped her from doing so during the meeting. Plaintiff will testify that she was told that the board agreed with the termination and was not told of her right to appeal termination decisions to the board. Plaintiff will testify that she disagreed with the stated reasons for termination but was not allowed to tell Mr. Fletcher her reasons for her disagreement.

PAGE 6 – PLAINTIFF'S WITNESS STATEMENTS

*LAW OFFICE OF STEPHEN L. BRISCHETTO*
*ATTORNEY AT LAW*
*621 SW Morrison St., Suite 1025*
*Portland, Oregon 97205*
*Telephone:  (503) 223-5814*
www.employmentlaworegon.com

Plaintiff will testify about the criminal investigation that stemmed from her termination. She will testify that she was charged with numerous felonies which could result in significant sanctions. She will testify that, ultimately, the DA agreed to let her plea to a Class C misdemeanor—the lowest possible charge—for alleged conduct that she understood was not part of her termination, and that the plea was subject to a "diversion." She will testify that the DA let her, in exchange for doing community service, have her plea dismissed and that, as a result, she was not ultimately convicted of anything. However, she will testify that she was required as part of her plea to relinquish her DPSST certifications, essentially ruining her career.  Lastly, Plaintiff will testify about the emotional distress caused by Defendant's treatment of her and her economic losses, including her lost wages, benefits and other pecuniary losses related to the criminal matter that would not have occurred but for the discriminatory criminal referral.

2.  Michael Fletcher
    9725 SW 163rd Ave.
    Beaverton, Oregon 97007
    Occupation: Executive Director of C911

**Length of Direct Exam: 1 hour**

Mr. Fletcher is an adverse witness to Plaintiff. As a result, Plaintiff cannot articulate with particularity what Mr. Fletcher will say at trial, though he is expected to testify consistent with his deposition in this case and with the documents he authored.

Mr. Fletcher will testify that immediately prior to applying rot the job as Executive Director at C911 in late 2017, he worked for a multi-jurisdictional consortium of C911 agencies, called MAJCS (pronounced "Magics"), that included C911. As a resulted, he reported to both

PAGE 7 – PLAINTIFF'S WITNESS STATEMENTS

*LAW OFFICE OF STEPHEN L. BRISCHETTO*
*ATTORNEY AT LAW*
*621 SW Morrison St., Suite 1025*
*Portland, Oregon 97205*
*Telephone:  (503) 223-5814*
www.employmentlaworegon.com

Mr. Watson and Brian Burright in 2016 and 2017. He will testify he learned of the position at C911 from, Burright, his C911 supervisor in mid 2017, and was told the position was open because of Watson's termination. Mr. Fletcher will testify that Burright asked him to apply for the C911 position. He will testify that Mr. Watson had previously told him he was considering resigning while he was under investigation, then told him he was let go because of an error he made.

Mr. Fletcher will testify he has known Mr. Watson since approximately 2012 and that he considers him a friend. He will testify that he and Mr. Watson regularly text each other, referring to each other as "friend" or "buddy." He will testify they also text each other about a lawsuit filed by Tyler Miller against Mr. Watson, which pertains to C911, and which was also filed in April 2018 when Mr. Fletcher started work at C911. He will testify that both he and Mr. Watson provide public safety services at a concert in San Diego, together, every year. Mr. Fletcher will testify that within a week of him starting work at C911, Mr. Watson emailed him about a quote his company had provided to C911. He will also testify that he learned that Watson was decertified by DPSST for gross misconduct and sexual misconduct and that he believes he first learned of the reason Watson was terminated or resigned in April 2018, soon after he started.

Mr. Fletcher will testify that prior to May 31, 2018, he had received no negative feedback from anyone regarding Karthauser, and thought she was doing a good job. He will testify even before he started, he had some limited communication with Karthauser about training, and referred her to his wife, Kathy, who does APCO and CAD training for Washington County.

Mr. Fletcher will testify that on May 31, 2018 he learned that a group of people wanted to meet with him regarding Plaintiff and that he immediate alerted Mr. Blitz. He will testify that he

PAGE 8 – PLAINTIFF'S WITNESS STATEMENTS

*LAW OFFICE OF STEPHEN L. BRISCHETTO*
*ATTORNEY AT LAW*
*621 SW Morrison St., Suite 1025*
*Portland, Oregon 97205*
*Telephone: (503) 223-5814*
www.employmentlaworegon.com

met with the group on June 6 and that they raised concerns about Plaintiff's performance and communication style. Toward the end of the meeting some also raised allegations that the APCO training was poorly done or was incomplete, which he saw as the most serious complaint lodged by the group. Mr. Fletcher will testify that, that same day, he met with Mr. Watson, in person.

Mr. Fletcher will testify that he called Mr. Blitz and the personnel committee of the Board, Mr. Anderson and Mr. Heimuller, to alert them they had a serious problem regarding APCO and Karthauser and to get advice about putting hereon admin leave while they did a full investigation. Mr. Fletcher will testify he thought Karthauser should be fired even before the investigation had started and that Mr. Blitz made the decision to investigate Karthauser for criminal violations. Mr. Fletcher will testify that the investigation was initially done by Jason Servo but, because Mr. Blitz didn't like Servo insisting on getting Karthauser's side of the story, Mr. Blitz completed the investigation. At the end of the investigation, Mr. Fletcher will testify he received a report from Mr. Blitz recommending termination for alleged criminal violations pertaining to APCO, which he agreed with because he saw her conduct as intentional and malicious. Mr. Fletcher will testify that he didn't provide any documentation to Karthauser about the reasons for the investigation, nor did he ask her side of the story before he made a termination decision and, while the investigation was ongoing, took steps to hire his wife to redo the training on APCO that was initially done by Karthauser.

Mr. Fletcher will testify that he was in contact with the OSP regarding the criminal investigation into Karthauser initiated by Blitz. He will testify that he forwarded information about the investigation to his friend Mr. Watson and told Mr. Watson that he might want to speak with the investigator.

PAGE 9 – PLAINTIFF'S WITNESS STATEMENTS

*LAW OFFICE OF STEPHEN L. BRISCHETTO*
*ATTORNEY AT LAW*
*621 SW Morrison St., Suite 1025*
*Portland, Oregon 97205*
*Telephone:  (503) 223-5814*
*www.employmentlaworegon.com*

Mr. Fletcher will also testify that he supervised Jason McClafferty, a manager, like Karthauser, and one of a three of Mr. Fletcher's direct reports. He will testify that Plaintiff informed him Mr. McClafferty had illegally accessed CJIS in May 2018. Mr. Fletcher will testify that he believed this to implicate criminal laws and to be a serious issue for C911 and Mr. McClafferty. Mr. Fletcher will testify he confronted Mr. McClafferty and asked for his side of the story and that, even though Mr. Fletcher was not satisfied by his explanation, that he counseled him for his conduct, consistent with C911's progressive discipline policy. Mr. Fletcher will testify that he didn't consider referring him for criminal prosecution even though McClafferty's conduct was intentional and possibly criminal. Mr. Fletcher will testify that, even after this report, Fletcher received many more reports of misconduct against Mr. McClafferty which he addressed with Mr. McClafferty, at the advice of Mr. Blitz. Instead of hiring an outside investigator, Mr. Fletcher will testify he investigated the concerns, himself, and then engaged in regular, ongoing coaching sessions with Mr. McClafferty in an attempt to correct his behavior, which both internal staff and external partners found belittling, bullying and sexist. Even after receiving and investigating more and more complaints, Mr. Fletcher will testify he created a "mitigation plan" for Mr. McClafferty, provided him with a verbal warning, and considered sending him to management training at Blitz's law firm. Only when, after the counseling and after the verbal warning and the months of mitigation plan, additional complaints of dishonesty arose did he move to terminate Mr. McClafferty.

3.  Brian Burright
    2430 7th Street
    Columbia City, Oregon 97018

PAGE 10 – PLAINTIFF'S WITNESS STATEMENTS

*LAW OFFICE OF STEPHEN L. BRISCHETTO*
*ATTORNEY AT LAW*
*621 SW Morrison St., Suite 1025*
*Portland, Oregon 97205*
*Telephone:  (503) 223-5814*
www.employmentlaworegon.com

Occupation: Retired

**Length of Direct Exam: 20 minutes**

Mr. Burright is an adverse witness to Plaintiff. As a result, Plaintiff cannot articulate with particularity what Mr. Burright will say at trial, though he is expected to testify consistent with his prior statements to OSP regarding Plaintiff.

Mr. Burright was the interim Executive Director for C911 from May 1, 2017 through Mr. Fletcher's hire in April 2018. He will testify he knew Plaintiff for many years prior to him starting at C911, and that he had a part in rolling out the previous EMD card system that was used by C911.

Mr. Burright will testify that he oversaw the transition to APCO and CAD while he was interim Executive Director which, because of the two simultaneous transitions and staffing problems at C911, was hectic and overwhelming. He will testify that he worked closely with Fletcher during that time period, too, since he was involved in the CAD transition which involved coordinating transitions with four different agencies.

Mr. Burright will testify that Plaintiff always seemed committed and dedicated to doing the right thing and that his perception of the APCO training at the time was that things were progressing well. Mr. Burright will testify that he doesn't know if there is flexibility on how the APCO training is done or not, and he didn't delve into the specific details on that issue. He will testify that Plaintiff told her that APCO had been fairly loose in defining how the training needed to be done, especially with people who were experienced with a different card system. He will testify that Plaintiff set forth a plan for how she would do the training, which involved self-paced training that experienced staff could do on their own time, and that he thought the plan sounded

PAGE 11 – PLAINTIFF'S WITNESS STATEMENTS

*LAW OFFICE OF STEPHEN L. BRISCHETTO*
*ATTORNEY AT LAW*
*621 SW Morrison St., Suite 1025*
*Portland, Oregon 97205*
*Telephone: (503) 223-5814*
www.employmentlaworegon.com

fine.  Mr. Burright will testify that Plaintiff told him she received some minor pushback for how the training was rolled out, but nothing significant enough to warrant his direct involvement, and that staff often complains about how management conducts training.

Mr. Burright will testify that the EMD cards are not a crucial tool for the dispatcher if the person has experience. He will testify that experienced EMD dispatchers, like those trained by Plaintiff, would rarely need to use the EMD cards, at all, based on their years of experience and the fact that most calls are fairly routine and involve first aid and CPR; something they know very well. He will testify that he thinks it's a good idea for people to use the cards just to make sure small things don't get missed, but there is no increased danger to the public if an experienced EMD dispatcher doesn't use the cards in most situations.

Mr. Burright will testify that he was shocked to find out Plaintiff was terminated for falsifying training records, and acknowledges that, in the real world, "pencil whipping" training records is a fairly common thing in the industry, even if that shouldn't be the case in a perfect world.

4. Steve Watson
   6336 Portal Way, Space #24
   Bellingham, Washington 98248
   Occupation: Vice President of Operations

**Length of Direct Exam: 30 minutes**

Mr. Watson is an adverse witness to Plaintiff. As a result, Plaintiff cannot articulate with particularity what Mr. Watson will say at trial, though he is expected to testify consistent with his deposition in this case and with the documents he authored.

Mr. Watson will testify that he was an employee of C911 for approximately twenty years.

PAGE 12 – PLAINTIFF'S WITNESS STATEMENTS

*LAW OFFICE OF STEPHEN L. BRISCHETTO*
*ATTORNEY AT LAW*
*621 SW Morrison St., Suite 1025*
*Portland, Oregon 97205*
*Telephone:  (503) 223-5814*
www.employmentlaworegon.com

He received a number of promotions and supervised Plaintiff in a number of roles, including as a training coordinator.  He will testify that he did not have concerns regarding her performance at any time, either as a co-worker or as a direct report and that, as a training coordinator, she had broad discretion to determine how training was done. Mr. Watson will testify that he was promoted to Executive Director in January 2016.  Mr. Watson will testify that, while he was Executive Director, he was investigated for sexual harassment and misconduct by Liana Reeves in 2017. Mr. Watson will testify that he wanted to resign in early March 2017, once the investigation was commenced, but that Mr. Blitz talked him out of it because it had to do with Mr. Miller, who Mr. Blitz did not care for. Mr. Watson will testify that the investigated ended in April 2017 and resulted in him being provided with the option of being terminated or resigning in lieu of termination. Mr. Watson will also testify that he spoke with Ms. Cindy Turula, one of the women he was accused of harassing, during the investigation about whether she had deleted any of their text messages. Mr. Watson will testify that he knew Plaintiff was involved  in the investigation and that she was a key part of the findings that he was untruthful because he read the Reeves report before he was terminated. He will testify that the Reeves investigation and circumstances surrounding his termination had a role in his wife leaving him. He will testify that after his resignation, he participated in a police investigation into Miller.

Mr. Watson will testify that he has known Mike Fletcher for over twenty years and worked with him when Watson was Executive Director  on the CAD transition, which Mr. Fletcher was overseeing for four agencies, including C911. He will testify that as part of that, he met with Mr. Fletcher regularly in 2016 and, by 2017, while he was being investigated for sexual harassment, he met with him weekly, spoke with him outside of meetings and texted him

PAGE 13 – PLAINTIFF'S WITNESS STATEMENTS

*LAW OFFICE OF STEPHEN L. BRISCHETTO*
*ATTORNEY AT LAW*
*621 SW Morrison St., Suite 1025*
*Portland, Oregon 97205*
*Telephone:  (503) 223-5814*
www.employmentlaworegon.com

regularly. Mr. Watson will testify that he considered him a friend at the time of the investigation

and that they made plans to work security at a music festival in San Diego together, just weeks

before Watson's termination, as they had in past years. Mr. Watson will testify that he was then

hired by Communications NW, a vendor of C911,  in October 2017 and that he spoke with Mr.

Fletcher when Mr. Fletcher was applying for the position of Executive Director at C911 at

around that same time. Mr. Watson will also testify that, upon Mr. Fletcher's hire, that Mr.

Fletcher called him to tell him that he had been hired because he is a "good friend." Mr. Watson

will testify that he provided Fletcher with additional information about his termination, including

details about the Miller allegations of sexual harassment, the investigation that Plaintiff

participated in, Blitz's involvement in the process and more that led to his forced resignation.

Soon after this conversation, Mr. Watson will testify that he may have had a conversation with

Fletcher about potentially  terminating Plaintiff's employment, and knows he received an email

and phone call from Fletcher recommending he speak with the police about a post-termination

criminal investigation of Karthauser. Mr. Watson will testify that he had no idea why he would

speak with the police since the allegations regarding Karthauser occurred after his termination in

2017, which Burright was in charge.  Mr. Watson will also testify that during the Miller case,

which related to retaliation for opposing sexual harassment by Watson against Plaintiff, that he

provided regular updates to Mr. Fletcher on the case, including forwarding him communications

from his lawyer, and that Mr. Fletcher also provided him with updates on the case.


   5.   Nancy Edwards
        35012 Ruby Court
        St. Helens, Oregon 97051
        503-369-3137


PAGE 14 – PLAINTIFF'S WITNESS STATEMENTS

*LAW OFFICE OF STEPHEN L. BRISCHETTO*
*ATTORNEY AT LAW*
*621 SW Morrison St., Suite 1025*
*Portland, Oregon 97205*
*Telephone:  (503) 223-5814*
www.employmentlaworegon.com

**Length of Direct Exam: 30 minutes**

Ms. Edwards is an adverse witness to Plaintiff. As a result, Plaintiff cannot articulate with particularity what Ms. Edwards will say at trial, though she is expected to testify consistent with her deposition in this case and with the documents she authored and received.

Ms. Edwards has been employed by C911 since 1995 and has been the Chief Financial Officer for C911 since 2017. At all times, Ms. Edwards has reported directly to the Executive Director. Ms. Edwards will testify that C911 does not have a human resources staff to handle employee complaints, and that she handles other HR functions, such as payroll, workers compensation and medical leave.  Ms. Edwards will testify that Plaintiff alerted her that, in 2017, she went from working 4 days a week to 7 days of week, with a reduction in pay. Ms. Edwards will testify that she doesn't recall if she did anything to increase her pay to address her concerns. Ms. Edwards also was alerted that Plaintiff thought Turula may be falsifying her timecards in 2017 but didn't look into the concerns.

Ms. Edwards will testify that she does not regularly give or receive performance evaluations, even though they are required to be done, yearly. Ms. Edwards also will testify that the district has a policy of progressive discipline which she believes is generally followed.  Ms. Edwards will testify that Mr. Blitz was involved  as their legal counsel, at all material times, including providing advice about whether staff should or should not be terminated.  Ms. Edwards will testify that they only just started doing sexual harassment training at C911 in 2017, the same year Watson was permitted to resign in lieu of termination.

Ms. Edwards will testify that that C911 was in the process of transition to new APCO

PAGE 15 – PLAINTIFF'S WITNESS STATEMENTS

*LAW OFFICE OF STEPHEN L. BRISCHETTO*
*ATTORNEY AT LAW*
*621 SW Morrison St., Suite 1025*
*Portland, Oregon 97205*
*Telephone:  (503) 223-5814*
www.employmentlaworegon.com

EMD cards in 2017 as well as a new CAD system. Ms. Edwards will testify that she believes Plaintiff when to training in Florida for APCO but doesn't know what it covered, and that Plaintiff was working a huge number of hours because the agency was short-staffed.

Ms. Edwards will testify that Watson told her that Miller had reported to the Board that he was sexually harassing Ms. Turula, which he denied. Ms. Edwards will testify she had a separate conversation with Ms. Turula who confirmed he had been harassed her and had asked her to delete her text messages with him. She will further testify that Ms. Turula told her about him being sexually involved with other women at work and that his wife was planning to leave him because of his sexual activities at C911. Ms. Edwards will testify that Mr. Watson indicated he was going to resign before the investigation got started, but that he did not do so, initially. Ms. Edwards will also testify that she met with Liana Reeves as part of her investigation into sexual harassment by Watson and disclosed what Turula had told her, as well as that Ms. Edwards had heard Watson admit to trying to kiss another employee, Terri Bobbitt.  Ms. Edwards will testify that she also disclosed other affairs he had over the years and that he referred to another manger, Trish Hilsinger, as "hon" and "babe" while at work. Ms. Edwards will testify that she thought Mr. Watson was widely liked but was worried how he could be an effective leader with all these sexual allegations and had concerns about his moral compass.  She will testify that she knew Watson had hit on Karthauser, too, but doesn't know where she heard it from, thought it may have been from Plaintiff, directly.

Ms. Edwards will testify that Mr. Edwards was hired in April 2018, but the hiring was delayed because of concerns about him going to his ex-wife's house with a gun. She will testify that she knew Fletcher, previously. because he the CAD manager for the CAD transition project

PAGE 16 – PLAINTIFF'S WITNESS STATEMENTS

LAW OFFICE OF STEPHEN L. BRISCHETTO
ATTORNEY AT LAW
621 SW Morrison St., Suite 1025
Portland, Oregon 97205
Telephone:  (503) 223-5814
www.employmentlaworegon.com

and would attend board meetings in 2017, during the Watson investigation, to give updates on the transition plan.

Ms. Edwards will testify that no staff had ever told her that Plaintiff had provided inadequate EMD training, that Plaintiff was a bully or that she had violated confidentiality rules, despite 18 years of employment with C911. Ms. Edwards will testify that in late May and early June, Mr. Fletcher told her people were starting to raise concerns regarding Plaintiff, especially about her APCO training. She will testify that Fletcher told her that Plaintiff was being placed on administrative leave, at the advice of Mr. Blitz, for the APCO training issues. She will testify she was shocked about how it all happened and had no idea about the allegations, but also that she doesn't know what the training entails or how the APCO cards are actually used by dispatchers.

Ms. Edwards will testify that she attended the meeting on July 16, 2018 with Mr. Fletcher and Plaintiff when Plaintiff was given the notice of intent to terminate. Ms. Edwards will testify understood the purpose of the meeting was either to terminate her or get her to resign and recalls that Plaintiff did not know the allegations prior to the meeting.

6.  Akin Blitz
    7580 SW Cedar St.
    Portland, Oregon  97225
    Occupation:  Attorney

**Length of Direct Exam: 1 hour**

Mr. Blitz is an adverse witness to Plaintiff. As a result, Plaintiff cannot articulate with particularity what Mr. Blitz will say at trial, though he is expected to testify consistent with his deposition in this case and with the documents he authored.

Mr. Blitz was C911's attorney at all material times and actively participated in the

PAGE 17 – PLAINTIFF'S WITNESS STATEMENTS

*LAW OFFICE OF STEPHEN L. BRISCHETTO*
*ATTORNEY AT LAW*
*621 SW Morrison St., Suite 1025*
*Portland, Oregon 97205*
*Telephone:  (503) 223-5814*
www.employmentlaworegon.com

investigations into Mr. Watson, Mr. Miller and Plaintiff, made the decision to refer both Mr.

Miller and Plaintiff for criminal investigations, and made employment or contract

recommendations for all three individuals.  Mr. Blitz will testify that he advised C911, upon

learning of complaints of sexual harassment against Watson, to have his firm investigate the

complaints.

      Mr. Blitz will testify that his law firm conducted two concurrent investigations regarding

the Watson matter, with Mr. Blitz personally investigating Miller's subjective motivations for

making his complaint, while his colleague, Ms. Liani Reeves, investigated the merits of whether

Watson actually engaged in sexual harassment or misconduct. He will testify that, at his advice,

Mr. Watson was not placed on leave and continued to work in the office during the pendency of

the investigation.

      Mr. Blitz will testify that Ms. Reeves issued a report finding Mr. Watson had a history of

inappropriate sexual behavior at work toward female current employees, including Ms. Turula

and Plaintiff, and that Ms. Watson was dishonest in his responses to questions regarding

Plaintiff. Mr. Blitz will testify that Ms. Reeves recommended Watson's be terminated for his

sexual harassment and dishonesty.

      Mr. Blitz will testify that because he had serious concerns about Miller's subjective

motivations in reporting Mr. Watson, he did his own analysis of those motivations separate from

Reeves. Mr. Blitz will testify that he did this because Mr. Blitz thought Mr. Miller had a

nefarious agenda and was obsessed with the personal affairs of Mr. Watson. Mr. Blitz will testify

that, early in the investigation, when he learned Mr. Watson wanted to resign, he talked him out

of it because Ms. Reeves' investigation was not complete and such a decision was premature,

PAGE 18 – PLAINTIFF'S WITNESS STATEMENTS

*LAW OFFICE OF STEPHEN L. BRISCHETTO*
*ATTORNEY AT LAW*
*621 SW Morrison St., Suite 1025*
*Portland, Oregon 97205*
*Telephone:  (503) 223-5814*
www.employmentlawaregon.com

especially given Mr. Miller, who he did not like, was at the center of making the complaints.

Mr. Blitz will testify he thought it would be detrimental to the agency if Mr. Watson left since

Mr. Blitz thought he was well regarded, notwithstanding his sexual misconduct. Even though

Ms. Reeves corroborated Mr. Miller's complaint, Mr. Blitz opined that Mr. Miller's conduct in

bringing forward concerns regarding sexual harassment by Mr. Watson could result in criminal

liability for Mr. Miller, but not Mr. Watson, even though his concerns against Mr. Watson were

corroborated and founded.  Mr. Blitz will testify that he thought Watson's lying to Reeves could

be interpreted with some amount of empathy and provided a path for the board, should they wish

to retain Watson, even though the adverse findings by Reeves could result in "Brady" issues for

Watson.

Mr. Blitz will testify that he recommended to the board that Mr. Miller be referred for

criminal prosecution, and the matter was sent to the Clackamas County DA instead of the

Columbia County DA to avoid the appearance of impropriety by the agency and the local DA.

He will testify that the Clackamas County DA declined to prosecute finding that Mr. Miller did

not engage in criminal conduct by reporting the sexual harassment by Mr. Watson. When Mr.

Watson resigned in lien of termination, he will testify that he did not seek to have Mr. Watson

condition his resignation in revocation of his DPSST licenses, like he did for Plaintiff, but he

knows that DPSST did, ultimately, revoke his licenses for gross misconduct and dishonesty.

In April 2018, at the same time as Fletcher's hire, Mr. Miller sued Mr. Blitz, Mr. Watson

and others for retaliation pertaining to his complaint against Watson about Turula and

Karthauser. Mr. Blitz will testify that Mr. Fletcher was the contact at C911 for that suit, and they

emailed about the case as it progressed, even though neither C911 nor Mr. Fletcher were parties

PAGE 19 – PLAINTIFF'S WITNESS STATEMENTS

*LAW OFFICE OF STEPHEN L. BRISCHETTO*
*ATTORNEY AT LAW*
*621 SW Morrison St., Suite 1025*
*Portland, Oregon 97205*
*Telephone:  (503) 223-5814*
www.employmentlaworegon.com

to the suit.

In late May and early June 2018, Blitz will testify that Fletcher alerted him of concerns raised by staff about Plaintiff, centered on Plaintiff's training on APCO. Mr. Blitz will testify he advised that Plaintiff be place on administrative leave pending an investigation and advised Mr. Fletcher not to tell Plaintiff why she was being placed on leave. Mr. Blitz will testify that his firm retained an investigator, Jason Servo, to investigate the concerns,  including Mr. Blitz's concern as to whether Plaintiff had criminal liability. Ultimately, Mr. Blitz was unhappy with Mr. Servo's investigation. Specifically, he will testify that he didn't want Mr. Servo to meet with Ms. Karthauser to get her side of the story for fear that her statements to him might immunize her from criminal liability; something he wanted to keep on the table, even if the investigation violated C911 policy.  Mr. Blitz will testify that Mr. Servo's engagement ended over this dispute before a report was written or conclusions were made, and that Mr. Blitz finished the investigation by summarizing Mr. Servo's work and offering recommendations to terminate and to refer for criminal charges.  Mr. Blitz will testify that he sent his recommendations both to Fletcher and the newly appointed Columbia County DA—not the Clackamas County DA, as he did with Miller—and did not propose any roadmap whereby Karthauser was retained as an employee, and that C911 followed his recommendation to terminate Plaintiff, even without ever hearing her side of the story.

Mr. Blitz will testify that he represented C911 during Plaintiff's BOLI complaint for discrimination and retaliation and thought her complaint was filed in "bad faith", even though no one had ever interviewed Plaintiff about her termination or asked about what evidence she had of discrimination or retaliation. Mr. Blitz will testify he thought the same thing about her tort claim

PAGE 20 – PLAINTIFF'S WITNESS STATEMENTS

*LAW OFFICE OF STEPHEN L. BRISCHETTO*
*ATTORNEY AT LAW*
*621 SW Morrison St., Suite 1025*
*Portland, Oregon 97205*
*Telephone:  (503) 223-5814*
www.employmentlaworegon.com

notice, too. Mr. Blitz will testify that he tried to get BOLI to hold off on investigating her

"specious" claims of discrimination and retaliation until the criminal case was over and that

BOLI was unreasonable ignorant by not agreeing to his demands.  He will testify that he told

BOLI, to try to get them to back down, that participating in the BOLI investigation would

constitute criminal activity by the agency; a statement he acknowledges is greatly overstated. He

will also testify that he tried to convince the DA to make any plea conditioned on her

withdrawing her BOLI complaint for discrimination and retaliation, but that the DA did not

agree to do so. Mr. Blitz will testify that, after its investigation, that BOLI found there to be

substantial evidence of discrimination by C911 against Plaintiff.

Mr. Blitz will testify that, when Mr. Fletcher asked him for status updates on the criminal

case, that Blitz raised concerns about both he and Mr. Fletcher could appear biased against

Plaintiff. Still, Mr. Blitz will testify that he repeatedly contacted the DA to make sure that any

plea is conditioned on her being revoked by DPSST, for life, thereby destroying her career in law

enforcement, even though neither DPSST nor C911 never asked him to do that, and even though

he does not represent DPSST.

Mr. Blitz will testify that the DA's ultimate plea offer to Plaintiff, which she accepted,

was an extraordinarily good deal for her.  He will testify it resulted in her not admitting any

conduct that related to the actual reasons for termination, and resulted in no criminal liability, at

all. However, Mr. Blitz will testify that he was ultimately satisfied with the deal because the DA

required her to revoke her DPSST certifications, thereby destroying her career in law

enforcement, forever.

PAGE 21 – PLAINTIFF'S WITNESS STATEMENTS

*LAW OFFICE OF STEPHEN L. BRISCHETTO*
*ATTORNEY AT LAW*
*621 SW Morrison St., Suite 1025*
*Portland, Oregon 97205*
*Telephone:  (503) 223-5814*
www.employmentlaworegon.com

7. Cindy Foley (fka Cindy Turula)
   51557 SW 6th Street
   Scappoose, Oregon 97056
   Occupation:  Retired

**Length of Direct Exam: 20 minutes**

Ms. Foley will testify that she was hired by C911 in 2010 and reported to Steve Watson. She will testify that she had regular text message communication with Tyler Miller, a contractor with C911, who was a friend of hers at the time. She will testify that she was subjected to unwanted sexual advances by Mr. Watson and that she knew Plaintiff had, too. She will testify that when she rebuffed his advances, Mr. Watson was unhappy with her and was also very angry when he learned she had started dating someone else. Ms. Foley will testify that she told Plaintiff that she was being hit on by Mr. Watson and that Plaintiff told her that he had hit on her, too. Ms. Foley will testify that, when the Ms. Reeves investigation started,  Mr. Watson asked her to delete her and his text messages and indicated he was going to do the same, too. Ms. Foley will testify that she told Miller about the advances and request to delete messages, and he reported those concerns to C911 at various times.

Ms. Foley will testify that the results of the Reeves investigation were widely known because Mr. Miller posted them on the internet and put a link to the investigation on a billboard in Columbia County. Ms. Foley will testify that she read portions of the investigation from this link. Ms. Foley will testify that she participated in the Servo investigation into Plaintiff, and she understood it was being done because of concerns raised by colleagues that Plaintiff did not work well with others. Ms. Foley will testify that she had one interaction with Plaintiff that she

PAGE 22 – PLAINTIFF'S WITNESS STATEMENTS

*LAW OFFICE OF STEPHEN L. BRISCHETTO*
*ATTORNEY AT LAW*
*621 SW Morrison St., Suite 1025*
*Portland, Oregon 97205*
*Telephone:  (503) 223-5814*
www.employmentlaworegon.com

found unusual and uncomfortable in early 2018, but no other issues with Karthauser. She will testify that Plaintiff worked "crazy hours" in 2017 and 2018 because the agency was so short staffed.

When Mr. Fletcher was hired, she will testify that he checked in with her because of her involvement in the Watson investigation, and that she told him she was glad that he was gone. She will testify that it was clear to her that he knew of the Watson investigation independent of those check-ins.

8.  Henry Heimuller
    234 South 15th Street
    St. Helens, Oregon 97051
    Occupation:  Columbia County Commissioner

    **Length of Direct Exam: 20 minutes**

Mr. Heimuller is an adverse witness to Plaintiff. As a result, Plaintiff cannot articulate with particularity what Mr. Heimuller will say at trial, though he is expected to testify consistent with his deposition in this case and with the documents he authored and received.

Mr. Heimuller has been a county commissioner since 2010 and an elected board member of C911 for over thirty years. He will testify that the board authorizes the creation of the employee handbook which provide employees certain rights before they can be placed on administrative leave or termination, as well as a right to appeal. Mr. Heimuller will testify that he doesn't know what the right to appeal means, or even whether the board can overturn a personnel decision made by the Executive Director.

Mr. Heimuller will testify that the board authorized the Bullard firm, through Akin Blitz

PAGE 23 – PLAINTIFF'S WITNESS STATEMENTS

*LAW OFFICE OF STEPHEN L. BRISCHETTO*
*ATTORNEY AT LAW*
*621 SW Morrison St., Suite 1025*
*Portland, Oregon 97205*
*Telephone:  (503) 223-5814*
www.employmentlaworegon.com

and Liani Reeves, to investigate allegations of sexual harassment against Mr. Watson. He will

also testify that he spoke with Watson about the allegations, and he denied the allegation.

Heimuller will testify he heard Watson wanted to resign during the investigation, but that Mr.

Blitz recommended he be discouraged from doing so, and that, either way, Mr. Heimuller wanted

the investigation concluded. He will testify that Mr. Watson was not placed on administrative

leave during the investigation; a decision made by Mr. Blitz.

Mr. Heimuller will testify that he both read the Reeves Report about Mr. Watson and the

Blitz report about Mr. Miller and attended a board meeting where they presented on their

investigations and recommendations.  He will testify he knows the Reeves addressed Karthauser

reporting that Watson had asked her out and how she had declined. He will testify that as part of

the discussion of the Blitz/Miller report, which was intertwined with the Reeves/Watson report,

that Blitz had identified a potential pathway to retain Mr. Watson. Mr. Heimuller will testify that

the board generally agreed that by losing Mr. Watson, C911 was losing a huge amount of

technical knowledge.  He will testify that Blitz and the board didn't discuss referring Watson for

criminal prosecution, but did so for Mr. Miller, even though Mr. Miller's complaints about Mr.

Watson were corroborated by Ms. Reeves.

Mr. Heimuller will testify that he was involved in the hiring of Mr. Fletcher, which was

delayed because of concerns about prior criminal history for Mr. Fletcher involving the use of a

firearm. He will testify that he has no recollection of Mr. Fletcher ever addressing concerns

about Plaintiff prior to the decision to place her on admin leave. He will testify that the board

didn't make the decision to refer Karthauser for criminal prosecution, like they did for Miller,

and that either Mr. Fletcher or Mr. Blitz made that decision on their own.

PAGE 24 – PLAINTIFF'S WITNESS STATEMENTS

*LAW OFFICE OF STEPHEN L. BRISCHETTO*
*ATTORNEY AT LAW*
*621 SW Morrison St., Suite 1025*
*Portland, Oregon 97205*
*Telephone:  (503) 223-5814*
www.employmentlaworegon.com

Mr. Heimuller will testify that he assumes Plaintiff was provided notice of the reasons for termination and a chance to respond well in advance of her termination, consistent with C911 policy, and agrees that employees should be provided with that information prior to a termination decision being made. He will testify that, over the years, he has heard that there is a culture of threats and retaliation at C911, but there was never an investigation into whether it was true. He will testify that fellow board member, Mr. Woolley, openly raised concerns in the wake of Plaintiff's termination that Watson may have been retaliating against Karthauser by terminating her and having her criminally investigated and seeking revenge through Mr. Fletcher. He will testify that there was no investigation or follow up as to those concerns.

9.  Rob Anderson
    32158 Scappoose Vernonia Highway
    Scappoose, Oregon 97056
    Occupation: Paramedic Lieutenant

    **Length of Direct Exam: 20 minutes**

Mr. Anderson has been an elected board member of C911 since 2001. He has also served on the personnel committee for 12 years. He will testify that the board authorized Mr. Blitz to oversee an investigation into sexual misconduct by Watson in 2017 and will testify as to the process the board went through to approve the investigation. He will testify that Mr. Blitz informed the board that, during the investigation, Mr. Watson wished to resign and advised them not to let him resign. He will testify that the board also had Mr. Blitz investigate Mr. Miller because Mr. Watson claimed Mr. Miller was "blackmailing" him; Watson's defense to the investigation. He will testify that, based on his investigation, that Mr. Blitz wanted to refer Mr.

PAGE 25 – PLAINTIFF'S WITNESS STATEMENTS

*LAW OFFICE OF STEPHEN L. BRISCHETTO*
*ATTORNEY AT LAW*
*621 SW Morrison St., Suite 1025*
*Portland, Oregon 97205*
*Telephone: (503) 223-5814*
www.employmentlaworegon.com

Miller for criminal prosecution, which he did.

Mr. Anderson will testify that he was present when Reeves reported on her investigation and recommended dismissal and that the board decided to let him resign. Mr. Anderson will testify he read the Reeves report, including the portions regarding Karthauser's participation in opposition Mr. Watson's harassment. Mr. Anderson also was involved with receiving updates regarding the Miller investigation, and that there was discussion about how Watson was a longtime employee and was well regarded, generally, by staff.

Mr. Anderson will testify that, in 2018, he understood that Plaintiff was investigated by a third party, and then Mr. Blitz, for falsification of records and that Karthauser was terminated. Mr. Anderson will testify that the board did not make the decision to refer Karthauser for criminal prosecution, and that he assumes that either Mr. Blitz or Mr. Fletcher made that decision. Mr. Anderson will also testify about his understanding about the investigation of Plaintiff, which was done by a combination of Jason Servo and Akin Blitz. He will also testify that when a fellow board members raised concerns about whether Watson was retaliating against Karthauser through Mr. Fletcher, that there was no follow up to determine if that was so.

Mr. Anderson will testify that the personnel committee, if not the board, was privy to complaints about Jason McClafferty, including potentially very significant complaints. He will testify that that Mr. Fletcher counseled him on his performance, did not do an external investigation overseen by Mr. Blitz into potential criminal allegations, and that his employment wand handled very differently than how Plaintiff was treated.

10. Deb Franklin
   PO Box 1323
   345 SW Kichenor St

PAGE 26 – PLAINTIFF'S WITNESS STATEMENTS

*LAW OFFICE OF STEPHEN L. BRISCHETTO*
*ATTORNEY AT LAW*
*621 SW Morrison St., Suite 1025*
*Portland, Oregon 97205*
*Telephone:  (503) 223-5814*
www.employmentlaworegon.com

Clatskanie, OR 97016
503-369-3263
Occupation: Retired

**Length of Direct Exam: 15 minutes**

Ms. Franklin is a longtime friend of Plaintiff and a former co-worker of hers at C911. Ms. Franklin will testify about Plaintiff's emotional distress damages. She will testify that Plaintiff loved her job at C911, would put C911 ahead of most everything in her life and that her work at C911 defined Plaintiff, to a large extent. Ms. Franklin will testify about Plaintiff's mental state when she was investigated in the spring of 2018, terminated and criminally charged and how these actions impacted Plaintiff, emotionally.  Ms. Franklin will testify that when she heard Plaintiff was terminated for not doing the required training, she was immediately suspicious because, based on her experience at C911, the trainings offered rarely matched up with the number of hours specified.

11. Chris Lake
    18342 Sauvie Island Rd.
    Portland, OR 97231
    503-396-6171
    Occupation: Fire Chief, Sauvie Island Fire District

**Length of Direct Exam: 10 minutes**

Chief Lake was a colleague of Plaintiff who knows Plaintiff through his time with Columbia River Fire and Scappoose Fire District, agencies that interacted with C911, and agencies that Plaintiff, on occasion, has volunteered for. He will testify that Plaintiff enjoyed her work at C911, was very committed to it and appeared to do a very good job. He will testify that,

PAGE 27 – PLAINTIFF'S WITNESS STATEMENTS

*LAW OFFICE OF STEPHEN L. BRISCHETTO*
*ATTORNEY AT LAW*
*621 SW Morrison St., Suite 1025*
*Portland, Oregon 97205*
*Telephone:  (503) 223-5814*
www.employmentlaworegon.com

upon her promotions, her dedication to C911 appeared to increase even more.

Chief Lake will testify about Plaintiff's emotional distress damages. Chief Lake will testify that he was shocked when she was let go, and also about how the termination and criminal investigation impacted Plaintiff.

Chief Lake will testify that Plaintiff reached out to him about potentially working for Kaiser, his employer at the time, after she was terminated by C911. He will testify that Plaintiff disclosed the stated reasons for her termination, including alleged false statements on training reports, ethical issues, and that they were pursuing criminal charges against her. Chief Lake will testify that, because of his years working alongside her, that none of these stated reasons for termination raised concerns for him because he knew she was a highly ethical and professional person and, as a result, discounted the termination and pending criminal charges. Chief Like will testify found the criminal allegations to be bizarre under the circumstances, even if they were true, and that public safety agencies often skirt a fine line when it comes to accreditation and training, focusing on best practices as opposed to the strict requirements of accreditation. Chief Lake will say that he recommended Plaintiff be hired by Kaiser, that she was hired, and that Plaintiff excelled in the position, achieving promotions. Chief Lake will testify how Plaintiff's mental health appeared to approve once someone, like Kaiser, was willing to give her a second chance and hear her side of what had occurred.

12. William Kerr
    421 SW Cedar Ave
    Warrenton, OR 97146
    503-338-9481
    Occupation: Retired

PAGE 28 – PLAINTIFF'S WITNESS STATEMENTS

*LAW OFFICE OF STEPHEN L. BRISCHETTO*
*ATTORNEY AT LAW*
*621 SW Morrison St., Suite 1025*
*Portland, Oregon 97205*
*Telephone:  (503) 223-5814*
www.employmentlaworegon.com

**Length of Direct Exam: 10 minutes**


Mr. Kerr is a longtime friend of Plaintiff. Mr. Kerr will testify about Plaintiff's emotional distress damages, how much she loved her job at C911, and how she threw herself into her work. He will testify that Plaintiff told him she was being sexually harassed by Watson when it initially occurred, and he encouraged her to report it, but that Plaintiff was afraid of retaliation by Watson or others at C911.

Mr. Kerr will testify about how the administrative leave and termination impacted Plaintiff, emotionally. He will testify that when she finally learned the reason for the termination, she was shocked. He will testify he, too, was shocked because the stated reasons didn't ring true. He will testify that, as part of his work, he regularly attended required training that was supposed to be a certain length in training hours for accreditation, but that the actual training was usually much shorter.  Mr. Kerr will testify that the termination was devastating for Plaintiff, as was the criminal investigation, and that he accompanied Plaintiff to her grand jury testimony to provide much needed moral and emotional support to Plaintiff. He will testify that the impacts of Plaintiff's departure from C911 impacts her to the present day.


13.  Noah Horst
     Levi, Merrithew Horst PC
     610 SW Alder St #415
     Portland, OR 97205
     971-229-1241

     **Length of Direct Exam: 5 minutes**


PAGE 29 – PLAINTIFF'S WITNESS STATEMENTS

*LAW OFFICE OF STEPHEN L. BRISCHETTO*
*ATTORNEY AT LAW*
*621 SW Morrison St., Suite 1025*
*Portland, Oregon 97205*
*Telephone:  (503) 223-5814*
www.employmentlaworegon.com

Mr. Horst was Plaintiff's primary attorney in her criminal case. He will testify as to the amounts paid for legal representation in defense of the criminal charges asserted against the Plaintiff as a result of the referral for criminal prosecution by Blitz and C911.  He will testify that the amounts billed by his firm and his predecessor were paid by the plaintiff, that the amounts incurred were necessarily incurred in defending plaintiff from criminal prosecution and that the amounts are reasonable for the services of defense counsel given the nature of the charges directed against the plaintiff.

DATED this 2nd  day of January 2023.

/s Matthew C. Ellis
Matthew C. Ellis, OSB No. 075800
Matthew C. Ellis, PC
621 SW Morrison St., Ste. 1025
Portland, OR  97205
Tel: (503) 345-5497
matthew@employmentlawpdx.com

Stephen L. Brischetto, OSB No. 781564
Attorney for Plaintiff
621 SW Morrison St., Suite 1025
Portland, Oregon 97205
Attorney for Plaintiffs
Ph:503-223-5814
slb@brischettolaw.com

PAGE 30 – PLAINTIFF'S WITNESS STATEMENTS

*LAW OFFICE OF STEPHEN L. BRISCHETTO*
*ATTORNEY AT LAW*
*621 SW Morrison St., Suite 1025*
*Portland, Oregon 97205*
*Telephone:  (503) 223-5814*
www.employmentlaworegon.com