# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **DIANA KARTHAUSER**, | Case No. 3:20-cv-127-SI |
| Plaintiff, | **OPINION AND ORDER ON MOTIONS *IN LIMINE*** |
| v. | |
| **COLUMBIA 9-1-1 COMMUNICATIONS DISTRICT**, | |
| Defendant. | |

Stephen L. Brischetto, LAW OFFICE OF STEPHEN L. BRISCHETTO, 621 SW Morrison Street, Suite 1025, Portland, Oregon 97205; and Matthew C. Ellis, LAW OFFICE OF MATTHEW C. ELLIS, 621 SW Morrison Street, Suite 1025, Portland, Oregon 97205. Of Attorneys for Plaintiff.

Karen M. O'Kasey and Blake H. Fry, HART WAGNER LLP, 1000 SW Broadway, Twentieth Floor, Portland, Oregon 97205. Of Attorneys for Defendant.

**Michael H. Simon, District Judge.**

Plaintiff Diana Karthauser (Karthauser) is a former employee of Defendant

Columbia 9-1-1 Communications District (C911). After the Court's ruling granting in part and

denying in part Defendant's motion for summary judgment (ECF 70), Karthauser will present

four claims to a jury. Karthauser asserts two claims for sex discrimination, alleging that C911

terminated Karthauser's employment and/or referred her for criminal prosecution because of her sex, in violation of Title VII of the Civil Rights Act of 1964 (42 USC § 2000e-2(a)) and Oregon Revised Statutes (ORS) 659A.030(1)(a). Karthuaser also asserts two claims for retaliation, alleging that C911 terminated Karthauser's employment because of her role in reporting information and/or opposing what she reasonably believed was evidence of sexual harassment or sexual discrimination by C911's Executive Director Steve Watson (Watson), in violation of Title VII of the Civil Rights Act of 1964 (42 USC §2000e-3(a)) and ORS 659A.030(1)(f). Pending before the Court are the parties' motions *in limine*.

## STANDARDS

A motion *in limine*, broadly defined, means "any motion, whether made before or during trial, to exclude anticipated prejudicial evidence before the evidence is actually offered." *Luce v. United States*, 469 U.S. 38, 40, n.2 (1984); United States v. Heller, 551 F.3d 1108, 1111 (9th Cir. 2009) (stating that a motion *in limine* is a "procedural mechanism to limit in advance testimony or evidence in a particular area"). As with other motions raised before trial, motions *in limine* "are useful tools to resolve issues which would otherwise clutter up the trial." *City of Pomona v. SQM N. Am. Corp*., 866 F.3d 1060, 1070 (9th Cir. 2017) (citation and quotation marks omitted); *see also Luce*, 469 U.S. at 41 n.4 (explaining that a court may rule *in limine* "pursuant to the district court's inherent authority to manage the course of trials"). Further, "a ruling on a motion *in limine* is essentially a preliminary opinion that falls entirely within the discretion of the district court. The district court may change its ruling at trial because testimony may bring facts to the district court's attention that it did not anticipate at the time of its initial ruling." *Id.*

In many instances, however, rulings "should be deferred until trial, so that questions of foundation, relevancy, and potential prejudice may be resolved in proper context." *United States v. Pac. Gas & Elec. Co.*, 178 F. Supp. 3d 927, 941 (N.D. Cal. 2016). To exclude evidence on a

motion *in limine*, "the evidence must be inadmissible on all potential grounds." *McConnell v. Wal-Mart Stores, Inc.*, 995 F. Supp. 2d 1164, 1167 (D. Nev. 2014). Thus, denial of a motion *in limine* to exclude certain evidence does not mean that all evidence contemplated by the motion will be admitted, only that the court is unable to make a comprehensive ruling in advance of trial. *Id.* at 1168.

## BACKGROUND

To prove sex discrimination under both Title VII and its Oregon counterpart, ORS 659.030(1)(a), Karthauser must prove the following elements by a preponderance of the evidence: (1) Karthauser was discharged and/or referred for criminal prosecution by C911; (2) C911 discharged Karthauser and/or referred her for criminal prosecution because of her sex; (3) Karthauser was performing her job satisfactorily; and, (4) similarly situated individuals outside Karthauser's sex were treated more favorably. *See* 9th Cir. Civ. Jury Instr. 10.1 (rev. Sept. 2022); *see also Weil v. Citizens Telecom Services Co., LLC*, 922 F.3d 993, 1003 (9th Cir. 2019) (explaining that in a termination claim, as opposed to a failure to hire claim, a plaintiff must show she was "performing satisfactorily," as opposed to showing she was qualified to be hired for the position). "Because of" means "by reason of" or "on account of." This is sometimes referred to as "but-for causation." This form of causation is shown whenever a particular outcome would not have happened "but for" the purported cause.  It is a reason without which the adverse employment action would not have occurred. *See Bostock v. Clayton Cnty.*, 140 S. Ct. 1731, 1739 (2020) (explaining "because of" and but-for causation in context of claim under Title VII). "Similarly situated" means similarly situated "in all material respects." *Moran v. Selig*, 447 F.3d 748, 755 (9th Cir. 2006). In general, employees are similarly situated when they have similar jobs and display similar conduct. *Hawn v. Executive Jet Management Inc.*, 615 F.3d 1151, 1157 (9th Cir. 2010).

To prove retaliation under both Title VII and its Oregon counterpart, ORS 659A.030(1)(f), Karthauser must prove the following elements by a preponderance of the evidence: (1) Karthuaser opposed an unlawful employment practice by reporting information she reasonably believed was evidence of sexual harassment or sexual discrimination by the Executive Director of C911; (2) C911 subjected Karthauser to an adverse employment action by terminating her employment; and (3) Karthauser was subjected to the adverse employment action of employment termination because of her opposition to an unlawful employment practice. *See* 9th Cir. Civ. Jury Instr. 10.8 (rev. Mar. 2022); *see also Crawford v. Metro. Gov't of Nashville & Davidson Cty., Tenn.*, 555 U.S. 271, 274 (2009) (explaining that Title VII's antiretaliation provision has two alternative clauses, an "opposition clause," and a "participation clause"); *Freitag v. Ayers*, 468 F.3d 528, 541 (9th Cir. 2006) (stating the elements of a retaliation claim under the opposition clause). Under the opposition clause, "protection will be accorded whenever the opposition is based on a reasonable belief that the employer has engaged in an unlawful employment practice." *Id.* (citation omitted). A plaintiff is subjected to an adverse employment action because of her opposition to an unlawful employment practice if the adverse employment action would not have occurred but for that opposition. *See Bostock*, 140 S. Ct. at 1739.

Regarding damages, Plaintiff's position is somewhat inconsistent. In her Complaint, Karthauser alleges that she has suffered, among other things, "lost wages, fringe benefits and pre-judgment interest in an amount to be determined at trial" and that she is "entitled to reinstatement of her employment or in the alternative an award of future wages and fringe benefits in an amount to be determined at trial." ECF 1 at ¶ 34. In Plaintiff's Trial Memorandum (ECF 78), she states: "Plaintiff seeks an award of *back pay / lost wages*, as well as other economic loss related to her criminal case that she would not have incurred, but for the

discriminatory referral of her matter for criminal prosecution." ECF 78, at 17 (emphasis added). In Plaintiff's Response to Defendant's Motions *in Limine*, however, Karthauser states that "Plaintiff's complaint alleges claims for 'lost wages, fringe benefits' and 'future wages and benefits,' *not claims for back pay and front pay*." ECF 102 at 16 (emphasis added). Karthauser also seeks "[a]n award of compensatory damages for emotional distress, damage to reputation and other compensatory damages in an amount to be determined at trial." ECF 1 at 11. These issues will be discussed further below.

## DISCUSSION

**A. Plaintiff's Motions *in Limine***

### 1. "Same Decision"

Plaintiff requests an order precluding Defendant from offering evidence or argument that Defendant would have made the same decision to terminate Plaintiff or to refer her for criminal prosecution in the absence of sex discrimination or retaliation. Defendant does not oppose this motion. The Court GRANTS this motion.

### 2. Failure to Mitigate

Plaintiff requests an order precluding Defendant from offering evidence or argument that Plaintiff failed to mitigate her damages. Defendant does not oppose this motion. The Court GRANTS this motion.

### 3. Karthauser's Criminal Conviction

Plaintiff requests an order precluding Defendant from offering evidence or argument that Plaintiff was *convicted* of a criminal offense. The Court begins by noting that on July 5, 2022, the Columbia County Circuit Court ordered all records of Plaintiff's arrest, charge, and conviction set aside and expunged. Thus, as narrowly framed by Plaintiff, the Court GRANTS this motion.

The Court also notes that Plaintiff has offered her Petition to Plead Guilty (Ex. 77) and the Order to Set Aside Conviction (Ex. 79). Both documents show that Plaintiff was "convicted" of a criminal offense. To the extent that Plaintiff opens the door to evidence of her conviction, the Court will not preclude Defendant from offering appropriate evidence or argument. Further, to the extent that Plaintiff may seek to present evidence or argument regarding Defendant's referral of Plaintiff to the District Attorney or any related actions taken by the Oregon State Police or a grand jury, the Court will discuss that topic elsewhere in this Order.

Finally, the Court notes that Defendant has offered as Exhibit 210 the grand jury's indictment of Karthauser (ECF 81 at 2). Karthauser objects to Defendant's Exhibit 210 as irrelevant (ECF 100 at 3). Karthauser herself, however, as offered that same document as Plaintiff's Exhibit 76 (ECF 72 at 6) and has neither withdrawn her Exhibit 76 nor withdrawn her objection to Defendant's Exhibit 210.

### 4. Leading Questions

Plaintiff states that she may call as witnesses in Plaintiff's case-in-chief Defendant's Board members, managers, attorneys, employees, and former managers and employees. Plaintiff requests leave under Rule 611(c)(2) of the Federal Rules of Evidence to ask leading questions of these witnesses. Defendant does not oppose this motion except as to Defendant's former Executive Directors Steve Watson and Brian Burright. For the reasons stated below, the Court GRANTS this motion, including questions directed to Mr. Watson and Mr. Burright.

Rule 611 provides in relevant part: "Ordinarily, the court should allow leading questions . . . when a party calls a hostile witness, an adverse party, or a witness identified with an adverse party." Fed. R. Evid. 611(c)(2). "Rule 611 is designed to enlarge the categories of witnesses automatically considered to be adverse without any further showing of hostility so that leading questions may be used during their examination." 4 *Weinstein's Federal Evidence*

§ 611.06[3]. The former executive directors of Defendant are sufficiently "identified" with Defendant to satisfy this rule. *See Winant v. Bostic*, 5 F.3d 767, 773 (4th Cir. 1993) (holding that trial court did not abuse its discretion by allowing plaintiffs to use leading questions when examining former agent of defendants whom defendants had discharged).

### 5. Exclusion of Witnesses

Plaintiff requests an order excluding witnesses other than the parties and limiting Defendant to one representative present during testimony. Defendant does not oppose this motion and requests that it be reciprocal. Rule 615, in relevant part, does not authorize excluding a party who is a natural person, an officer or employee of a party that is not a natural person after being designated as the party's representative by its attorney, or a person whose presence a party shows to be essential to presenting the party's claim or defense. Fed. R. Evid. 615. The third category typically encompasses expert witnesses. No party, however, appears to be calling any expert witnesses. The Court GRANTS this motion reciprocally for both sides.

## B. Defendant's Motions *in Limine*

### 1. Referral to District Attorney

Defendant requests an order precluding Plaintiff from offering evidence or argument relating to Defendant's referral of Plaintiff to the District Attorney. Plaintiff opposes this motion. For the reasons stated below, the Court DENIES this aspect of Defendant's motion.

Defendant argues that, after summary judgment, the only remaining basis for Plaintiff's "referral" allegation is her gender discrimination claim under ORS 659A.030(1)(a) and Title VII. Defendants adds, however, that unlike the state and federal retaliation statutes, the gender discrimination statutes do not allow recovery for actions taken *after* a plaintiff's discharge that are unrelated to the terms, conditions, or privileges of employment. Defendant asserts that Plaintiff "was referred to the District Attorney after her discharge." ECF 84 at 3. In response,

Plaintiff states that Defendant referred Plaintiff to the District Attorney "prior to Karthauser's termination on July 16, 2018." ECF 102 at 4. In addition, Plaintiff has presented sufficient evidence at least to create a triable issue on this question. *See* ECF 115.

### 2. Watson Investigation and Resignation

Defendant requests an order precluding Plaintiff from offering evidence or argument relating to Defendant's investigation of its former Executive Director Steve Watson and his subsequent resignation. Plaintiff opposes this motion. For the reasons stated below, the Court DENIES Defendant's motion.

In its summary judgment decision, the Court concluded that the question of whether Watson is a "similarly situated" "comparator" for purposes of a claim of sex discrimination is a question for the jury. ECF 70 at 12-13. Moreover, the outcome of the Watson investigation, and Karthauser's role in that investigation, is relevant to whether Fletcher had a retaliatory motive against Karthauser based on Fletcher's relationship to Watson. Further, Defendant has listed Watson as a defense witness. The outcome of the Watson investigation, and Karthauser's role in that investigation, is relevant to Watson's possible bias.

### 3. Miller Investigation

Defendant requests an order precluding Plaintiff from offering evidence or argument relating to Defendant's investigation of its former employee Tyler Miller. Plaintiff opposes this motion. For the reasons stated below, the Court DENIES Defendant's motion.

Plaintiff argues that attorney Blitz's confidential report about Miller submitted to Defendant's Board was part of and related to Defendant's investigation of Watson and is, therefore, relevant for several of the same reasons that the Watson investigation is relevant. Also, before Defendant's referral of Plaintiff to the District Attorney, Defendant's attorney Blitz referred Miller and his action to the Clackamas County District Attorney (rather than to the

Columbia County District Attorney) to avoid any appearance of bias. Before referring Plaintiff and her action to a District Attorney, Defendant learned that the Clackamas County District Attorney declined to prosecute Miller. After receiving that information, Defendant referred Plaintiff to the Columbia County District Attorney. Thus, according to Plaintiff, Defendant referred Miller (a man) to an unbiased District Attorney but referred to Karthauser (a woman) to a potentially biased District Attorney.

### 4.  Miller Lawsuit

Defendant requests an order precluding Plaintiff from offering evidence or argument relating to Miller's unsuccessful lawsuit against Defendant and its outside law firm. The Court does not immediately see the relevance of any issues relating to Miller's lawsuit but will wait to rule on any objections timely made at trial. Accordingly, the Court DENIES Defendant's motion without prejudice to Defendant's ability to raise timely objections at trial.

### 5.  BOLI Documents

After Defendant terminated Plaintiff's employment, she filed a complaint with the Oregon Bureau of Labor and Industries (BOLI). Plaintiff offers numerous exhibits relating to her BOLI complaint, including correspondence to BOLI from Defendant's attorney, Akin Blitz, and BOLI's Notice of Substantial Evidence Determination (Exhibit 75). Defendant requests an order precluding this evidence as irrelevant, unfairly prejudicial, and inadmissible hearsay. Plaintiff opposes Defendant's motion. For the reasons stated below, the Court GRANTS IN PART AND DENIES IN PART this motion.

### a.  BOLI's Substantial Evidence Determination (Ex. 75)

Plaintiff argues that it is reversible error in a Title VII case to exclude evidence of an EEOC finding that there is probable cause to believe discrimination occurred, citing *Plummer v. Western International Hotels Co.*, 656 F.2d 502, 504 (9th Cir. 1981). *Plummer* held that an

EEOC probable cause determinations is *per se* admissible. *Id.* at 505 (explaining that "[a] civil rights plaintiff has a difficult burden of proof, and should not be deprived of what may be persuasive evidence" when such evidence is "prepared by professional investigators on behalf of an impartial agency" and is "highly probative" of an individual's discrimination complaint). Plaintiff further argues that it is error to exclude evidence of similar state administrative agencies' determinations of discrimination, citing *Heyne v. Caruso*, 69 F.3d 1475, 1483 (9th Cir. 1995) ("[T]he *Plummer* ruling is not restricted solely to EEOC findings of probable cause but extends to similar administrative determinations, including [a state agency's] findings.").

Defendant urges the Court to view the BOLI substantial evidence determination as equivalent to an EEOC letter of violation in an Age Discrimination in Employment Act (ADEA) case, rather than a finding of probable cause. The proper standard for EEOC letters of violation is stated in *Gilchrist v. Jim Slemons Imports, Inc.*, 803 F.2d 1488 (9th Cir. 1986), which held that EEOC letters of violation were potentially prejudicial and not subject to the *per se* admissibility rule under *Plummer*. *Id.* at 1500 ("A letter of violation . . . represents a determination by the EEOC that a violation of the [ADEA] has occurred and thus results in a much greater possibility of unfair prejudice."); *see also Amantea-Cabrera v. Potter*, 279 F.3d 746 (9th Cir. 2002). According to Defendant, the BOLI determination is closer to an EEOC letter of violation in an ADEA case than it is to a probable cause determination issued by the EEOC in a Title VII case, because the BOLI investigator made findings of fact and concluded there was substantial evidence of unlawful employment practices.

Defendant's characterization is not persuasive. Unlike the EEOC letter of violation in *Gilchrist*, the BOLI determination of substantial evidence is only a preliminary determination. BOLI would still need to take further action before making a final administrative ruling:

> Once BOLI receives the signed complaint, the case is opened and a
> BOLI Senior Civil Rights Investigator will investigate the
> complaint to determine if there is a link between the harm
> experienced (discriminatory act) and the protected class . . . At the
> completion of the investigation, BOLI will decide whether there is
> substantial evidence of an unlawful practice. If BOLI does not find
> substantial evidence of an unlawful practice, the case will be
> dismissed. If BOLI does find substantial evidence, the case may be
> moved toward conciliation or referred to the Administrative
> Prosecution Unit for review. The Administrative Prosecution Unit
> may choose to close a case, settle a case, or take the case to an
> administrative hearing."

Or. Bureau of Labor & Indus., *BOLI Investigations*, https://www.oregon.gov/boli/
employers/Pages/BOLI-investigations.aspx (last visited Jan. 18, 2023). Thus, unlike a finding of
*no* probable cause, BOLI's substantial evidence determination is not a final ruling by the agency.
*See Beachy v. Boise Cascade Corp.*, 191 F.3d 1010, 1015 (9th Cir. 1999) (distinguishing an
agency's "probable cause finding" from BOLI's determination that insufficient facts exist to
continue the investigation and noting that "[t]here is much greater risk of unfair prejudice
involved in introducing a final agency ruling as opposed to a probable cause determination").

Thus, the BOLI determination is similar to the EEOC reasonable cause determination in
*Plummer*. *See Heyne*, 69 F.3d at 1483 (holding that a Nevada Equal Rights Commission
probable cause finding was *per se* admissible under *Gilchrist* and *Plummer*); *Gilchrist*, 803 F.2d
at 1500 ("A finding of probable cause does not suggest to the jury that the EEOC has already
determined that there has been a violation. Rather, it suggests that preliminarily there is reason to
believe that a violation has taken place."). As in *Gilchrist* and *Heyne*, it would appear to be
reversible error for the Court to exclude the BOLI substantial-evidence determination from
evidence.

This matter is complicated, however, by a conflict under Oregon law. The Oregon Court
of Appeals has held that a BOLI substantial-evidence determination is hearsay and thus

inadmissible in a civil discrimination action to establish the truth of the determination. *Sleigh v. Jenny Craig Weight Loss Centres, Inc.*, 161 Or. App. 262, 266-67, *on recons.*, 163 Or. App. 20 (1999) (explaining that BOLI determinations are based on hearsay rather than the investigator's firsthand knowledge and are not designed to be factual findings based on truth); *see also H. K. v. Spine Surgery Ctr. of Eugene, LLC*, 305 Or. App. 606, 610 n.3 (2020) (citing *Sleigh* and holding that admission of BOLI documents was reversible error). Only one Ninth Circuit case appears to have addressed the admissibility of BOLI documents in a lawsuit asserting claims under both federal and Oregon law, but the parties in that case failed to raise a hearsay objection to the BOLI documents. *See Beachy*, 191 F.3d at 1016 (evaluating for plain error and concluding any error in admission of BOLI documents was harmless).

Accordingly, if Plaintiff offers BOLI's substantial evidence determination to show the truth of that determination, this evidence likely is inadmissible hearsay for purposes of Plaintiff's state-law claim. For Plaintiff's federal law claim, however, BOLI's determination likely is *per se* admissible. It is difficult, and perhaps impossible, for the Court to construct an effective limiting instruction that tells the jury that they may consider the BOLI Notice of Substantial Evidence Determination (Ex. 75) only for Plaintiff's federal claim but must disregard that evidence for Plaintiff's state claim. Despite its *per se* admissibility holdings in *Plummer* and *Heyne*, the Ninth Circuit notes that courts must still perform the weighing process mandated by Rule 403 when considering the admission of BOLI documents. *See Beachy*, 191 F.3d at 1015 ("[I]t appears that Judge Jelderks may have felt compelled to admit the documents pursuant to *Plummer* and *Heyne* and may not have weighed independently the documents' probative value and potential for prejudice."). Here, the probative value of the BOLI substantial evidence finding for Plaintiff's federal claim is substantially outweighed by the danger of juror confusion for Plaintiff's state

claim. Thus, the Court excludes the evidence of BOLI's Notice of Substantial Evidence

Determination (Ex. 75) under Rule 403.

### b. Attorney Blitz's Correspondence with BOLI

Defendant argues that attorney Blitz's communications to BOLI and others about

Plaintiff's BOLI complaint do not tend to prove that Defendant discriminated or retaliated

against Plaintiff and thus are irrelevant. Plaintiff responds that Blitz's letters to BOLI are

admissible to establish pretext on both the gender discrimination and retaliation claims. Plaintiff

points to the Court's summary judgment decision, in which the Court found that Plaintiff's

evidence of Defendant's excessive response was admissible to establish pretext. Plaintiff argues

that Blitz's communications with BOLI are evidence of Defendant's excessive response to

Plaintiff's alleged misconduct. Defendant correctly asserts that the burden-shifting framework,

which include a pretext analysis, does not apply at trial, where the only question is whether

Plaintiff can prove she was discharged *because of* her sex (a discrimination claim) or because of

her opposition to sexual harassment (a retaliation claim), citing *St. Mary's Honor Center. v.*

*Hicks*, 509 U.S. 502, 511-12 (1993).

But there is more to *Hicks*. As the Supreme Court explained in *Hicks*, a plaintiff at trial

"has the full and fair opportunity to demonstrate, through presentation of his own case and

through cross-examination of the defendant's witnesses, that the proffered reason was not the

true reason for the employment decision and that race was. [The plaintiff] retains that ultimate

burden of persuading the trier of fact that [she] has been the victim of intentional

discrimination." *Id*. at 507-08 (cleaned up). Further, a "factfinder's disbelief of the reasons put

forward by the defendant (particularly if disbelief is accompanied by a suspicion of mendacity)

may, together with the elements of the prima facie case, suffice to show intentional

discrimination. Thus, rejection of the defendant's proffered reasons will permit the trier of fact to infer the ultimate fact of intentional discrimination." *Id*. at 511 (cleaned up).

Blitz's communications relating to Plaintiff's BOLI complaint are relevant to show his bias and animus against Plaintiff and thus are admissible to impeach Blitz as a witness under Rule 608(c). In addition, other portions of the challenged exhibits are admissible under FRE 801(d)(2)(C) or (D) as relevant to Plaintiff's sex discrimination claim based on Defendant's referral of Plaintiff for criminal prosecution. For example, in Plaintiff's Exhibit 57, Blitz indicates he knows that the "litany of crimes" he lists in his letter to BOLI contains a "deep reach." Other contested exhibits, such as Plaintiff's Exhibit 62, contain statements that Blitz asked the District Attorney to condition a plea deal on revocation of Karthauser's "DPSST certification," which Plaintiff may argue shows Defendant's "excessive" response. Because Defendant authorized Blitz to make statements on these subjects or because Blitz acted as Defendant's agent in doing so, Blitz's statements are not hearsay, and, because they are relevant, the Court will not exclude them.

### c.  Plaintiff's BOLI Complaint

Plaintiff's BOLI complaint is found at Plaintiff's Exhibit 54. It is hearsay and not subject to any exception. Plaintiff argues that her BOLI complaint is offered not for the truth of the matter asserted but to show bias by Blitz and Defendant. Plaintiff's own statements in her BOLI complaint are not evidence of Defendant's bias, at least without accepting the truth of the matters asserted. Further, it is undisputed that Plaintiff timely filed a BOLI complaint and timely filed this lawsuit after BOLI issued its substantial evidence determination. There is no need to provide the jury with the BOLI complaint itself to understand the context of attorney Blitz's correspondence about that complaint. The statements in Plaintiff's BOLI complaint are relevant

only for the truth of the matters asserted and thus are inadmissible hearsay when offered by Plaintiff. Thus, the Court excludes Plaintiff's BOLI complaint, if offered by Plaintiff.

### 6. Unpaid Wages

Defendant requests an order precluding Plaintiff from offering evidence or argument relating to the fact that Plaintiff worked excessive hours for Defendant for which she was not paid. Plaintiff opposes this motion. For the reasons stated below, the Court GRANTS IN PART AND DENIES IN PART Defendant's motion.

Defendant correctly argues that Plaintiff has not brought an unpaid wages claim against Defendant. Thus, Plaintiff may not argue to the jury that Defendant owes Plaintiff any compensation for time worked but not paid. Upon timely request by Defendant, the Court will give the jury a limiting instruction on this issue.

Plaintiff, however, correctly argues that the evidence of Plaintiff's hard work and long hours, even when uncompensated and even though known to Plaintiff's supervisors, is relevant in several respects. First, this evidence provides context regarding the circumstances that led to the provision of a self-study training program for Defendant's dispatchers. Second, this evidence provides circumstantial evidence that Plaintiff had no intent or motive to deceive Defendant regarding training hours. Third, this evidence is circumstantial evidence of Defendant's failure to follow its own workplace policies. Fourth, this evidence is circumstantial that Plaintiff was performing satisfactorily. For all these reasons, the Court will allow this evidence.

### 7. Fletcher's Criminal Conviction

Defendant requests an order precluding Plaintiff from offering evidence or argument that Michael Fletcher was charged in 1992 with criminal mischief involving a firearm. Plaintiff does not oppose this motion. The Court GRANTS this motion.

### 8. Rumors regarding Edinger and Hilsinger

Defendant requests an order precluding Plaintiff from offering evidence or argument about rumors that were circulating among Defendant's employees regarding either Tracy Edinger or Trish Hilsinger. Plaintiff argues that the Court should deny this motion because it is not specific enough to give Plaintiff an opportunity meaningfully to respond. Plaintiff adds that in Defendant's workplace, Mr. Watson engaged in conduct towards Ms. Hilsinger that was observable and led to rationally based lay opinions concerning inappropriate relationships in the workplace. Plaintiff adds that many of these observable behaviors were discussed among Defendant's employees, reported to and investigated by outside attorney Reeves as part of her investigation of Watson, and became part of the basis for her report and recommendations to Defendants' Board. The Court does not immediately see the relevance of any issues relating to Edinger or Hilsinger but will wait to rule on any objections timely made at trial. Accordingly, the Court DENIES this motion without prejudice to Defendant's ability to raise timely objections at trial.

### 9. Back Pay and Front Pay

Defendant requests an order precluding Plaintiff from offering *in the presence of the jury* evidence or argument regarding Plaintiff's claims for back pay and front pay. According to Defendant, these are equitable issues for the Court and not the jury. For the reasons stated below, the Court DENIES IN PART Defendant's motion and RESERVES RULING IN PART on Defendant's motion.

#### a. Federal Law on Back Pay and Front Pay Under Title VII

"Title VII exists in large part to make persons whole for injuries suffered on account of unlawful employment discrimination." *Clemens v. Centurylink Inc.*, 874 F.3d 1113, 1115 (9th Cir. 2017) (citation and quotation marks omitted). Before 1991, Title VII provided only equitable

remedies, and jury trials were not available. 42 U.S.C. § 2000e-5(g)(1) (providing for reinstatement, back pay and "any other equitable relief as the court deems appropriate"). The Civil Rights Act of 1991 amended Title VII and added the legal remedies of compensatory and punitive damages and the right to trial by jury for those remedies. 42 U.S.C. § 1981a(a)(1).

Recovery of compensatory and punitive damages under Title VII, however, may not exceed certain statutory limits under 42 U.S.C. § 1981a(b)(3). The level at which damages are capped depends on the size of the employer. 42 U.S.C. § 1981a(b)(3)(A)-(D). A jury must not be advised of these limitations. 42 U.S.C. § 1981a(c)(2). Because awards of back pay are not an element of compensatory damages, they are not subject to the statutory limits. 42 U.S.C. § 1981a(b)(2). The Supreme Court has extended this rationale to exclude front pay from the statutory limits. *Pollard v. E.I. du Pont de Nemours & Co.*, 532 U.S. 843, 848 (2001) (holding that the 1991 amendments did not alter nature of front pay as equitable remedy provided for in 42 U.S.C. § 2000e-5(g)). The holding in *Pollard* that front pay is excluded from the statutory limits because it is an equitable remedy suggests that there is no entitlement to a jury trial for that remedy. *See Pollard*, 532 U.S. at 848.

Although the Supreme Court has declined to address definitively whether a Title VII plaintiff has a right to a jury trial on the issue of back pay, *see Landgraf v. USI Film Prods.*, 511 U.S. 244, 252 n.4 (1994), the Ninth Circuit has held that there is no such right. *Lutz v. Glendale Union High Sch.*, 403 F.3d 1061, 1069 (9th Cir. 2005) (holding that there is no right for a jury to determine either back pay or front pay because those are equitable remedies to be decided by a court). A district court, however, may consider submitting questions of front and back pay to a jury for advisory findings under Rule 39(c) of the Federal Rules of Civil Procedure.

This framework requires a court to define "back pay" and "front pay" and to distinguish these concepts from "compensatory damages" for purposes of Title VII. As noted, back pay and front pay are equitable remedies, not subject to statutory caps because they are not part of the legal remedy of compensatory damages under Title VII. "An award of back pay compensates plaintiffs for lost wages and benefits between the time of the discharge and the trial court judgment." *Johnson v. Spencer Press of Maine, Inc*., 364 F.3d 368, 379 (1st Cir. 2004). "Front pay, by contrast, is 'money awarded for lost compensation during the period between judgment and reinstatement or in lieu of reinstatement.'" *Id*. (quoting *Pollard*, 532 U.S. at 846). "Front pay thus compensates plaintiffs for lost wages that may accrue after the conclusion of the trial." *Id*. Both back pay and reinstatement are authorized under 42 U.S.C. § 2000e-5(g)(1). Further, "[r]einstatement and front pay are alternative remedies, which cannot be awarded for the same period of time." *Teutscher v. Woodson*, 835 F.3d 936, 954 (9th Cir. 2016) (holding that front pay is "money awarded for lost compensation during the period between judgment and reinstatement or in lieu of reinstatement" (citation and quotation marks omitted)).

Compensatory damages under Title VII are damages other than back pay or front pay that are needed to make persons whole for injuries caused by unlawful employment discrimination or retaliation.[1] Recoverable "compensatory damages," subject to Title VII's caps, consist of "future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses." 42 U.S.C. § 1981a(b)(3).

---

[1] "Compensatory damages awarded under this section shall not include backpay, interest on backpay, or any other type of relief authorized under section 706(g) of the Civil Rights Act of 1964." 42 U.S.C. § 1981a(b)(2). As noted, front pay is authorized as equitable relief under § 706(g), codified at 42 U.S.C. § 2000e-5(g).

This statutory provision leads one to ask, what are future pecuniary losses, which is a legal remedy under the rubric of compensatory damages, and how are "future pecuniary losses" different from front pay, which is an equitable remedy? As the Supreme Court noted in *Pollard*:

> In the abstract, front pay could be considered compensation for "future pecuniary losses," in which case it would be subject to the statutory cap. § 1981a(b)(3). The term "compensatory damages . . . for future pecuniary losses" is not defined in the statute, and, out of context, its ordinary meaning could include all payments for monetary losses after the date of judgment. However, we must not analyze one term of § 1981a in isolation. . . . When § 1981a is read as a whole, the better interpretation is that front pay is not within the meaning of compensatory damages in § 1981a(b)(3), and thus front pay is excluded from the statutory cap.

*Pollard*, 532 U.S. at 852. *Pollard*, however, merely states that future pecuniary losses are different from front pay. It does not explain how they are different.

The Seventh Circuit answered this question in *Williams v. Pharmacia, Inc.*, 137 F.3d 944 (7th Cir. 1998). Concluding that lost future earnings are a form of future pecuniary losses, the Seventh Circuit stated that "[a]n award of lost future earnings is a common-law tort remedy. To recover for lost earning capacity, a plaintiff must produce competent evidence suggesting that his injuries have narrowed the range of economic opportunities available to him. A plaintiff must show that his injury has caused a diminution in his *ability* to earn a living." *Id*. at 952 (cleaned up) (emphasis added). As further explained in *Williams*:

> Front pay in this case compensated Williams for the immediate effects of Pharmacia's unlawful termination of her employment. The front pay award approximated the benefit Williams would have received had she been able to return to her old job. . . .
>
> The lost future earnings award, in contrast, compensates Williams for a lifetime of diminished earnings resulting from the reputational harms she suffered as a result of Pharmacia's discrimination. Even if reinstatement had been feasible in this case, Williams would still have been entitled to compensation for her lost future earnings.

> \*   \*   \*

> Thus, the calculation of front pay differs significantly from the
> calculation of lost future earnings. Whereas front pay compensates
> the plaintiff for the lost earnings from her old job for as long as she
> may have been expected to hold it, a lost future earnings award
> compensates the plaintiff for the diminution in expected earnings
> in all of her future jobs for as long as the reputational or other
> injury may be expected to affect her prospects.

*Id*. at 953-54. In *Teutscher*, the Ninth Circuit discussed *Williams* in a different context and did

not answer the question of how front pay may differ from lost future earnings. In the absence of

further guidance from the Ninth Circuit, the Court will follow the distinction provided by the

Seventh Circuit in *Williams*. Moreover, it does not appear that Karthauser is seeking "lost future

earnings" in the sense used in *Williams*.

### b.  Oregon Law on Back Pay and Front Pay

Like Title VII, ORS 659A.030 provides for equitable relief in the form of back pay and

reinstatement. ORS 659A.885(1) provides that in any action under the statute, "the court may

order injunctive relief and any other equitable relief that may be appropriate including but not

limited to reinstatement or . . . back pay." Further, courts, not juries, decide these claims.

ORS 659A.885(1)(a) ("The judge shall determine the facts in an action under this subsection.").

In addition, Oregon courts interpret requests for back pay as equitable claims. *Seitz v. Albina*

*Hum. Res. Ctr.*, 100 Or. App. 665, 673 (1990); *see also id.* at 672-73 (discussing legislative

history and the close relationship between Oregon employment discrimination laws and

Title VII).[2] Thus, there is no statutory basis, either under ORS 659A or Title VII, for Plaintiff's

claim for back pay to be submitted to the jury.

---

[2] Plaintiff cites *Wooton v. Viking Distrib. Co.*, 136 Or. App. 56, 62 (1995), to suggest that
claims for lost wages are actions for compensatory damages tried to the jury. But *Wooten* did not

Oregon law on front pay, however, differs from federal law. ORS 659A.885(2)(a) authorizes awards of compensatory damages in addition to equitable relief for claims filed under ORS 659A.030, among other statutes. The Oregon Supreme Court has interpreted both front pay and lost future wages as forms of compensatory damages. *Tadsen v. Praegitzer Indus.*, 324 Or. 465, 470 (1996) ("[F]ront pay is a form of compensatory damages, because it restores the terminated employee to the economic position that the employee would have enjoyed, were it not for the employer's unlawful conduct."); *see also Schram v. Albertson's, Inc.*, 146 Or. App. 415, 423 (1997) ("It is questionable whether front pay is an equitable remedy in the light of the holding in *Tadsen* . . . ."). This departure from Title VII conflicts with case law generally interpreting Oregon's employment discrimination laws to be essentially equivalent to Title VII. *See Heller v. EBB Auto Co.*, 8 F.3d 1433, 1437 n.2 (9th Cir. 1993) (stating that courts construe ORS § 659.030 as "identical to" Title VII (gathering cases)); *Seitz*, 100 Or. App. at 672-73. Thus, unlike back pay under ORS 659A.885(1)(a), which is for a court to decide, front pay falls under the category of compensatory damages under ORS 659A.885(3)(a), and under Oregon law compensatory damages are for the jury to determine. ORS 659A.885(3)(b) ("At the request of any party, the action shall be tried to a jury.").

### c. Seventh Amendment Considerations

Plaintiff argues that her federal claims for back pay and front pay under Title VII should be tried to a jury because those claims are based upon common questions of law and fact under ORS 659A.885(2). She argues that these claims share questions of liability, causation, and damage. Under the Seventh Amendment, a judge is bound by the jury's decision on all issues

---

expressly address the issue now being discussed and held only that an "at-will" employee could recover front pay.

common to the requests for legal and equitable relief. *Lytle v. Household Mfg., Inc.*, 494 U.S. 545, 550-54 (1990); *Dairy Queen, Inc. v. Wood*, 369 U.S. 469, 479 (1962) (holding legal claims involved in case must be determined before any final court determination of equitable claims); *Beacon Theaters, Inc. v. Westover*, 359 U.S. 500, 510-511 (1959) (holding district court abused its discretion in trying to the court legal and equitable issues based upon common set of facts).

There is no dispute that common questions of fact underlie the determination of *liability* on the state law and federal claims that Plaintiff asserts. This includes the key questions of causation, namely whether Defendant terminated Plaintiff's employment and/or referred her for criminal prosecution because of her sex and whether Defendant terminated Plaintiff's employment because of her role in reporting information and/or opposing what she reasonably believed was evidence of sexual harassment or sexual discrimination by C911's Executive Director Watson. This also includes whether Karthauser was performing her job satisfactorily and whether similarly situated men were treated more favorably. These issues must be decided by a jury. In addition, Plaintiff's state law claims for front pay must be submitted to a jury, *Tadsen*, 324 Or. at 470, and the Court will be bound by the jury's factual determinations on those claims when deciding Plaintiff's claims for front pay under Title VII. Similarly, issues relating to Plaintiff's compensatory damages (*e.g.*, emotional distress and out-of-pocket costs related to her criminal defense) are questions for the jury under both her state and federal claims. In summary, on these questions, the Court DENIES Defendant's motion.

That leaves only the damages portion of Plaintiff's *back pay* under her state and federal claims. The parties do not dispute that Defendant terminated Plaintiff's employment on July 16, 2018. *See* ECF 78 at 11; ECF 83 at 2. Also, Defendant is not asserting either a "same defense" or

a "failure to mitigate" affirmative defense. Thus, the Court is at a loss to understand what is left for a factfinder, whether judge or jury, to decide in determining Plaintiff's back pay damages. The Court requests clarification from the parties on this question. The Court also seeks the parties' position on whether, if the jury were to learn (or be denied learning) the amount of Plaintiff's lost back pay, any unfair prejudice would result and, if so, how. On these questions, the Court DEFERS RULING on Defendant's motion.

## CONCLUSION

The Court GRANTS IN PART AND DENIES IN PART Plaintiff's motions *in limine* (ECF 75) and Defendant's motions *in limine* (ECF 84) as stated in this Opinion and Order.

**IT IS SO ORDERED**.

DATED this 24th day of January, 2023.

*/s/ Michael H. Simon*
Michael H. Simon
United States District Judge
