IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **DIANA KARTHAUSER**,<br><br>        Plaintiff,<br><br>v.<br><br>**COLUMBIA 9-1-1 COMMUNICATIONS DISTRICT**,<br><br>        Defendant. | Case No. 3:20-cv-127-SI<br><br>**ORDER ON PLAINTIFF'S TRIAL EXHIBITS 72, 73, and 75** |

Stephen L. Brischetto, LAW OFFICE OF STEPHEN L. BRISCHETTO, 621 SW Morrison Street, Suite 1025, Portland, Oregon 97205; and Matthew C. Ellis, LAW OFFICE OF MATTHEW C. ELLIS, 621 SW Morrison Street, Suite 1025, Portland, Oregon 97205. Of Attorneys for Plaintiff.

Karen M. O'Kasey and Blake H. Fry, HART WAGNER LLP, 1000 SW Broadway, Twentieth Floor, Portland, Oregon 97205. Of Attorneys for Defendant.

**Michael H. Simon, District Judge.**

      The Court provides the following additional rulings on Plaintiff's Exhibits 72, 73, and 75.

### EXHIBITS 72 AND 73

      During the pretrial conference held in this case, the Court reserved ruling on Plaintiff's Trial Exhibits 72 (transcript) and 73 (audio-recording) and requested a copy of the transcript

from the videotaped deposition of Brian Burright taken on January 19, 2023, to perpetuate his testimony for trial. ECF 118 at 3 (Rulings on Objections to Trial Exhibits). Plaintiff has since provided a copy of that transcript by email and filed a Supplemental Memorandum Regarding Exhibits 72 and 73. ECF 121. After that, Defendant responded, ECF 124, and Plaintiff replied, ECF 125.

Brian Burright (Burright) was the Interim Executive Director for Defendant from May 2017 through April 2018. On December 20, 2018, Oregon State Police (OSP) Detective Andy Hasenkamp interviewed Burright in connection with Detective Hasenkamp's criminal investigation of Plaintiff's activities while working for Defendant. Detective Hasenkamp audio-recorded that interview, which was later transcribed.

Both parties have identified Burright as a trial witness. ECF 79 (Plaintiff's Witness List); ECF 82 (Defendant's Witness List). On January 19, 2023, the parties perpetuated the videotaped deposition of Burright for use at trial. During his deposition, Burright confirmed that he reviewed a copy of the transcript from his December 2018 OSP interview (Interview) before his January 2023 deposition (Deposition), that this review assisted in refreshing Burright's recollection, and that he was truthful during his Interview. The Court has read both transcripts. Plaintiff argues that in four specific areas Burright's statements made during the December 2018 Interview were different from, and more favorable to Plaintiff, than Burright's testimony during his January 2023 Deposition.

**A.    Burright's Knowledge of APCO Training Method**

In his Deposition, Burright initially said that he did not recall much about the methods Plaintiff was using in the APCO training. During his OSP Interview, however, Burright stated:

> Q.    Do you remember if she ever approached you with like, kind of, a proposal of how she should conduct training?

PAGE 2 – ORDER ON PLAINTIFF'S TRIAL EXHIBITS 72, 73 AND 75

> A. Um. I've tried to recollect that, as well. I remember a couple of times where – I think it was – and I'll try to – I think she kind of laid out what her plan was.
>
> Q. Mm-hm.
>
> A. Which I think was kind of – if – if I would – it was kind of like a self-study, self-paced training program where the dispatchers, on their own, would be required to, kind of, go through whatever steps they needed to go through to – to achieve the hours that they needed or proficiencies that they needed . . . .

Ex. 72, at 15:13-16:2.

**B.    Burright's Knowledge that Plaintiff Did Not Receive In-Person Training**

In his Deposition, Burright initially did not answer whether Plaintiff told Burright that APCO did not provide her with in-person training. During his OSP Interview, however, Burright stated:

> Q. [I]f I told you that the training from APCO is – their requirement, their standard is to have it be in – in classroom and instructor-led for 40 hours? Would that surprise you or does that –
>
> A. No. It wouldn't surprise me.
>
> Q. Okay.
>
> A. As a standard of how to set up the best training for a product like that. Right?
>
> Q. Yeah.
>
> A. Um. But, it also wouldn't surprise me if – and I'll – I'll support this with something that Diana found. So, APCO – um – had some requirements to – for who could be the instructor. They has a certain criteria or a training level that they had to go through and again, this is from Diana, so I don't know how truthful or how clear it was being presented. But, in her words, it was kind of like in my instructor training, they were very – like pretty loosey (phonetic) as far as how to achieve that. I think she was able to do it online. . . .

Ex. 72, at 19:2-25.

PAGE 3 – ORDER ON PLAINTIFF'S TRIAL EXHIBITS 72, 73 AND 75

## C. Burright's Knowledge of Plaintiff's Multiple Demands on Her Time

Plaintiff states that she will testify at trial that she told Burright that she could not do in-person APCO training given the multiple demands on her in the workplace. In his Deposition, Burright initially testified that he had no reason to think that Plaintiff was not able to handle the APCO training program. During his OSP Interview, however, Burright stated:

> Q. So you're – these are my kind of words but very familiar with the – that whole aspect of it up until the change?
>
> A. Yes.
>
> Q. And then –
>
> A. Yes. And so, if – if your question is how much was I involved in my year as the Interim Executive Manager –
>
> Q. Mm-hm.
>
> A. – in the training of the new APCO system? Um. Not at all.
>
> Q. Okay.
>
> A. Um. I did have occasions – just updates from Diana on where we were with the program, because we had to – you know – bring it in. We had to --
>
> Q. Yup.
>
> A. – get the cards delivered and she went through and – um – there is some ability to manipulate those cards or to adapt them to your organization system. So, she was involved with that for quite some time and then – and then, yeah. It went live kind of in a really busy period where we were changing the CAD system. A brand new computer-aided dispatch system.
>
> Q. Mm-hm.
>
> A. Which was really kind of overwhelming for her. Because it was a whole another – a whole other look.

Ex. 72, at 11:5-12:8.

### D. Burright's Belief that Experienced Dispatchers Do Not Need EMD Cards

Plaintiff states that she will testify that Defendant had experienced dispatchers at the time and that a self-study method of instruction was appropriate for experienced dispatchers. In Burright's Deposition, Plaintiff asked Burright whether experienced dispatchers needed EMD cards to do their jobs well and Burright's answer was less supportive of Plaintiff's position than was his answer during his OSP Interview, when Burright stated as follows:

> Q. Would – just from your experience – you know – I, guess, everything that you've – you've had over all these years, would experience alone be able to replace – you know – EMD cards?
>
> A. Yes.
>
> Q. So, if you were an experienced – let's say – in other words, if you were a very experienced dispatcher – I'm trying to think of one of them over there. One of them that's been around a long time.
>
> A. Yup.
>
> Q. They would barely need to use the EMD cards?
>
> A. Correct.

Ex. 72, at 25:15-26:4.

### E. Burright's Changing Loyalties

Plaintiff argues that the entirety of Burright's OSP Interview will be important for the jury to hear when evaluating Burright's credibility, particularly when evaluating the gaps in Burright's memory, the changes in his testimony, and his repeated statements contrary to what he said in his OSP Interview. Also, Burright previously expressed his support of Plaintiff in a series of text messages sent between June and November 2018. Burright told Plaintiff that he "believed in [her]," that he "feel[s] stupid" if he missed something or "gave her bad advice," that the "process seems over the top," "that he will not have anything negative to say," and "[j]ust know that I believe in you and think that you didn't get a fair shake." Exhibit 96 at 3, 4, 5. During his

Deposition, however, Burright was represented by Defendant's counsel. Plaintiff argues that the jury should hear the entirety of Burright's 30-minute OSP Interview to be able to evaluate Burright's credibility or bias during his Deposition testimony.

**F.    Analysis**

Plaintiff first offers Burright's OSP Interview for impeachment purposes. Because the four specific statements quoted above in Sections A-D are inconsistent with Burright's perpetuated trial testimony as reflected in his Deposition, the Court will allow the jury to hear these prior inconsistent statements. Second, Plaintiff requests that the jury hear the entirety of the 30-minute Interview so that the jury can compare Burright's tone of voice with his tone during his perpetuated testimony for purposes of evaluating his bias and credibility. The Court will allow Plaintiff to play the audio-recording to the jury but also will give Defendant an opportunity to request that specific portions of the Interview be redacted if Defendant believes those portions are unfairly prejudicial. Defendant must designate any specific portions of the Interview to be redacted not later than February 28th and shall then promptly confer with Plaintiff. The parties shall inform the Court by March 7th, if there are any remaining disputes on which portions, if any, should be redacted.

Finally, because Burright stated in his perpetuated deposition that everything he said in the OSP Interview was "truthful," Tr. 19:1-5, and thus accurately reflects Burright's knowledge, the four specific portions quoted above will also be received as substantive evidence under the hearsay exception for recorded recollection. Fed. R. Evid. 803(5); *see also* Fed. R. Evid. 807 residual exception). To avoid placing undue emphasis on the transcript of a witness's testimony, however, the Court will only allow the audio-recording, Exhibit 73, to be played to the jury during trial alongside the perpetuated testimony of Burright, and neither Exhibit 72 nor Exhibit 73 will be received in evidence. *See also* Fed. R. Evid. 803(5) ("If admitted, the record

may be read into evidence but may be received as an exhibit only if offered by an adverse party."). Because Plaintiff is the proponent of this evidence at trial, Defendant is the adverse party for purposes of Rule 803(5).

### EXHIBIT 75

Plaintiff has offered in evidence Trial Exhibit 75, which is the "Notice of Substantial Evidence Determination" issued to Plaintiff by the Oregon Bureau of Labor and Industries (BOLI). Defendant previously moved *in limine* to exclude that document, and the Court granted Defendant's motion under Rule 403 of the Federal Rules of Evidence. ECF 117 at 9-13 (Opinion and Order on Motions *in Limine*); *see also* ECF 118 at 3. During the pretrial conference, the Court invited Plaintiff to submit additional authority on this issue, which Plaintiff has since done. ECF 119. Defendant then responded, ECF 122, and Plaintiff replied. ECF 123. The Court has reconsidered its ruling on Exhibit 75 and now denies Defendant's motion *in limine* to exclude that exhibit. Instead, the Court will receive in evidence Exhibit 75, subject to the limiting instruction described below, if requested by Defendant.

As Plaintiff correctly points out, the Oregon Court of Appeals decision in *Sleigh v Jenny Craig Weight Loss Centres, Inc.*, 161 Or App 262, 266-67, *on recons.*, 163 Or App 20 (1999), interpreted and applied Rule 803(8)(c) of the Oregon Evidence Code. In that case, the state appellate court gave a narrow construction to the term "factual findings" in the Oregon hearsay exception for public records. *Sleigh*, which was followed in *H.K. v. Spine Surgery Ctr. of Eugene, LLC*, 305 Or. App. 606, 610 n.3 (2020), held that the trial court erred in admitting the BOLI determination because it was hearsay not subject to any exception.

In *Beech Aircraft Corp. v. Rainey*, 480 U.S. 153 (1988), the U.S. Supreme Court declined to adopt a narrow view of the term "factual findings" in Rule 803(8) of the Federal Rules of Evidence. In addition, Rule 1101(b) of the Federal Rules of Evidence provides that the federal

PAGE 7 – ORDER ON PLAINTIFF'S TRIAL EXHIBITS 72, 73 AND 75

evidence rules apply to all civil cases in federal court except in circumstances where a state evidentiary rule is an integral part of state substantive law. *See Primiano v. Cook*, 598 F.3d 558, 563 (9th Cir 1990) (noting that Rule 702 of the Federal Rules of Evidence governs admissibility of testimony over inconsistent state provision).[1]

Finally, in *Plummer v. Western International Hotels Co.*, 656 F.2d 502, 504-05 (9th Cir. 1981), and *Heyne. V. Caruso*, 69 F.3d 1475, 1483 (9th Cir. 1995), the Ninth Circuit explained that EEOC "probable cause" determinations and similar administrative findings from other agencies are admissible in Title VII cases. Both cases held that it is reversible error in the trial of a Title VII case for a federal court to exclude evidence of an EEOC probable cause determination and similar administrative agency findings. Because BOLI's "substantial evidence" finding is closer to a "probable cause" finding than it is to a conclusive determination of liability, the BOLI finding is admissible. Plaintiff concedes that Exhibit 75 "is not a finding 'that C911 discriminated against plaintiff' or 'a determination that a violation occurred.'" ECF 123 at 4. It is simply a finding of "substantial evidence." Plaintiff also concedes that "Defendant is free to point to deficiencies in the BOLI determination and argue, just like any other evidence admitted at trial, that the evidence lacks credibility." *Id*. Accordingly, the Court will receive in evidence Exhibit 75 but will give the following limiting instruction if requested by Defendant:

> Members of the Jury. I am receiving in evidence Plaintiff's Exhibit 75, which is titled "Notice of Substantial Evidence Determination." A determination of "substantial evidence" is like a finding of "probable cause," no more and no less. It is not a conclusive finding that Defendant has discriminated against Plaintiff or a determination that a violation has occurred.

---

[1] The situation presented here is distinguishable from the situations in *Feldman v. Allstate Ins. Co.*, 322 F.3d 660, 666 (9th Cir. 2003), and *Wray v. Gregory*, 61 F.3d 1414, 1417 (9th Cir. 1995), which involved applications of substantive state law.

PAGE 8 – ORDER ON PLAINTIFF'S TRIAL EXHIBITS 72, 73 AND 75

> Defendant is free to point to deficiencies in BOLI's substantial evidence determination and argue that this evidence lacks credibility. The question of whether Defendant discriminated against Plaintiff is for you, the jury, to determine.

With this limiting instruction, if requested by Defendant, the Court finds that the probative value of Exhibit 75 is not substantially outweighed by the risk of unfair prejudice or confusing the issues. *See* Fed. R. Evid. 403; *see also Beachy v. Boise Cascade Corp.*, 191 F.3d 1010, 1015 (9th Cir. 1999) (noting that notwithstanding *Plummer* and *Heyne*, a district court must still weigh probative value and potential for unfair prejudice).

## CONCLUSION

The Court provides the additional rulings on Plaintiff's Exhibits 72, 73, and 75, as stated in this Order. The audio-recording contained in Exhibit 73 may be played to the jury as additional testimony (subject to redaction) when the jury receives the perpetuated testimony of Brian Burright, but neither Exhibit 72 nor Exhibit 73 will be received in evidence. Thus, these two exhibits will not be available to the jury during deliberations, although a juror may request a playback. Exhibit 75 will be received in evidence, and the Court will give a limiting instruction if requested by Defendant.

**IT IS SO ORDERED**.

DATED this 14th day of February, 2023.

*/s/ Michael H. Simon*
Michael H. Simon
United States District Judge